Jandt v South.

---

## JANDT V. SOUTH.

1. **PRACTICE.** This court will not reverse a judgment because of the insufficiency of the evidence to support the findings of fact, without the certificate of the court below, that the bill of exceptions contains all the evidence; but this court will review objectionable testimony bearing upon a single question in connection with a finding of fact, and conclusion of law based upon that finding; and where it clearly appears that evidence was improperly received, and that the finding of fact was based upon that improper evidence, and the conclusion of law upon that finding of fact was erroneous, this court will reverse.

2. **ATTORNEY FEES.** In this Territory the prevailing party cannot recover attorney's or counsel fees, unless there be an agreement or contract express or implied to pay the same, and the Statute authorizing the recovery in an action for the wrongful taking or detention of personal property, of damages for the detention thereof, does not change this rule.

3. **MEASURE OF DAMAGES.** The general rule as to damages in tort actions, or actions not founded upon contract, is the value of the property wrongfully taken, at the time, or at any time before recovery.

4. **FINDING OF FACT: INSUFFIENCY OF.** The failure of the court below, where the action was tried by the court, to find or pass upon all the material issues, is error, for which this court will reverse the judgment.

*Appeal from the Lincoln County District Court.*

THE facts are stated in the opinion.

*Bailey & Gifford,* for appellant.

The appellant in the above entitled cause urges, that the mortgage in question in this case is fraudulent on its face for the reason that it impliedly gives the mortgagor power to dispose of the mortgated stock without applying the proceeds to the payment of the mortgage debt. This is inferred from the clause in the mortgage covering after acquired property.

It is not claimed by the appellant, that as a general principle of law, a clause in a chattel mortgage covering after acquired property necessarily makes the mortgage fraudulent, but where this provision is found in a chattel mortgage that covers a stock of goods, and where the clause expressly covers "all goods to be subsequently purchased," etc., and this without containing any provision that the proceeds shall be applied to the payment of the mortgage debt, we insist the weight of authority declares the mortgage fraudulent upon its face.

In discussing this question courts have always taken into consideration the nature of the mortgaged property, the uses to which it is usually put and the most natural purposes that the mortgagor would have in keeping possession of and adding to the property mortgaged. The mortgagors in this case were dealers in retail merchandise, as appears from the evidence, and the mortgage covered their stock, fixtures, utensils, etc., in their store room, etc. The only reasonable use to which the property could be put, would be to expose the same for sale and sell it in the course of business, to-wit, at retail to whoever would buy just the same as though the stock was not mortgaged.

It is not reasonable to suppose that a clause would be inserted in the mortgage covering subsequently acquired goods, etc., unless it was understood that goods should be so acquired, and why should goods be subsequently acquired unless the mortgagor should have the right to sell? It would be utterly unnatural and contrary to the usual way of conducting business for the mortgagors to purchase goods for the simple purpose of adding to, and increasing the property secured by the mortgage.

In the case of *Griswold v. Sheldon*, 4 N. Y., 588, Bronson, C. J., says : " When a merchant hires a store and buys a stock of goods to put in it, and when moreover he agrees to keep a good, and full assort-

ment of goods in the store, and pay a debt out of the store at current prices, one must wink very hard not to see that he intended to deal with the goods as a merchant and sell them to his customers, and of course the other party to the contract knew what was meant as well as he did."

We urge in the case at bar that the mortgagor intended to go on with the business the same after, as before, the mortgage was given, and that the mortgagee knew what was meant and acquiesced in the arrangement, and further that this is deducible from the face of the mortgage.

Denio, J., says in 9 N. Y., 217, *Edgell v. Hart*: "But it seems to me that this prospective operation was an essential part of the entire arrangement. It was not intended to create an absolute lien upon any property but a fluctuating one which should open to release that which should be sold and to take in what should be newly purchased." And the Judge further says: "It may be safely assumed that the liberty to sell would not have been given, but for the right supposed to be acquired over subsequent purchase."

The appellant herein insists that the converse of the rule laid down by the learned Judge above is equally correct, that the mortgagor would not have sought to subject subsequently acquired property to the operation, of the mortgage, had not the right to sell been given. (See also Herman on chattel mortgages, 234.) The doctrine we are contending for, is clearly expressed by Davis, J., in *Robinson v. Elliot*, 22 Wall., 523: "It is not difficult to see that the mere retention and use of personal property until default, is altogether a different thing from the retention of possession accompanied with a power to dispose of it for the benefit of mortgagor alone."

We do not contend, nor have not in this case, that the mere retention of possession by the mortgagor, nor that the mere attempt to cover subsequently acquired property, alone of themselves create the presumption of fraud, but when these facts are taken into consideration in connection with the nature of the mortgaged property, the power to sell by the mortgagor is clearly inferred, and as the instrument is silent as to the disposition of the proceeds, the presumption is that the mortgagor can apply them to his own use,

and this creates the irresistible conclusion that the instrument is fraudulent within the authority of the cases here cited. The power to sell was inferred from the face of the mortgage in the following case: *Mittnacht v. Keller*, 42 N. Y. (3 Keys) 408. Parker, J., says: "That mortgaging the whole stock in trade, the whole concern forming the grocery and liquor store of the mortgagor with the increase and decrease thereof, and the providing for the continued possession of the mortgagor, can have no other meaning than that the mortgagee should all the time retain a lien on the whole stock, by the way of mortgage, the mortgagor making purchases from time to time, and selling off in the ordinary manner; the intent being not to create an absolute lien upon any property, but a fluctuating one which should open to release that which should be sold and take in what should be newly purchased.

In all these cases the nature of the mortgaged property is taken into consideration. A stock of goods is not put to the same use as a horse, cow or other stock, or an agricultural implement that a person might use without necessarily consuming or selling it in order to get the full benefit therefrom. See, also, 21 Minn., 192, and case of *Benjamin A. Mobley et al v. Albert and Letts*, Supreme Court of Indiana, opinion filed April 4th, 1878, where this doctrine is fully and ably discussed.

It will be found upon examination that in all cases of this nature, the agreement exists between the parties that the mortgagors can sell and replenish at pleasure.

But if the court should hold that the power of disposition cannot be inferred from the face of the mortgage, then the trial court has clearly found this agreement. The court finds, "that the sale of the mortgaged stock by the mortgagors, was with the knowledge and consent of plaintiff."

This finding must be taken in connection with and construed in the light of the testimony. Plaintiff says on page 17 of record: "No understanding was had after execution of mortgage."

This settles all doubt as to whether the agreement was entered into at the time of, or after the execution of, the mortgage; in fact we understand the appellee does not urge or pretend that the power of disposition was not given, nor as to its being given at the time

of the execution of the mortgage, but urges that under the authorities and the Code such an arrangement is perfectly lawful.

The weight of authority is certainly against the position of appellee. It must be borne in mind that there was no understanding proven or found between the parties that the proceeds of sales of stock was to be applied to the payment of the mortgage indebtedness. The mortgagôr says on page 14 of record: "I was to carry on business as I had done." Again on page 15: "Nothing was said as to what I was to do with the proceeds of the goods sold."

Plaintiff testifies on page 18: "No agreement was made that he was to apply all the proceeds of sale to notes," and the court below has failed to find any such agreement. The plaintiff cannot now claim that all the proceeds, or that any definite amount, or that any sum whatever of the proceeds of the sale of the mortgaged stock was to be paid to plaintiff to extinguish the mortgage debt. The evidence being conflicting, and the court below failing utterly to find any such arrangement, therefore we are left to infer that there was no such arrangement.

We are left to consider the effect of the *absence* of such an arrangement as established by the authorities. Ryan, C. J., says in *Blakesle v. Rossman;* Wisconsin Supreme Court, January term, 1878; Central Law Journal, April 12th, 1878: "The chattel mortgage and accompanying agreement   *   *   *   must be taken together and dealt with as one contract; they give a mortgage by a merchant to creditors of his entire stock of goods licensing the mortgagor to remain in possession and dispose of the goods in the course of his trade, applying one half of the proceeds of the sale towards his liability to the mortgagees. No provision is made in either paper for the disposition of the other half which is therefore left at the absolute disposal of the mortgagor, for his own use. It was vain for the respondent to say the mortgage contains no express agreement for the mortgagor's use of one half of the proceeds. The silence of the mortgage gives him the right as effectually as express agreement could. He retained the other half as effectually as he would have retained half of the goods had he mortgaged but half.

There can be no doubt of the truth of this doctrine. It is pro-

nounced in *Mobly et al v. Lett*, cited *supra*, Herman on Chattel Mortgage, 238; 7 Ohio St., 218; 22 Wall., 513.

In this connection we call the attention of the court to the case of *Freeman v. Rossman*, 5 Ohio St., 7. The following is the charge of the Judge:

"But if the jury should be satisfied from all the circumstances surrounding the transaction, including the conduct of the parties or their agents at the time and since the execution and delivery of the mortgage, that at the time it was executed it was understood between them that the mortgagor should continue to exercise such power of disposition, the mortgage would be equally fraudulent and void as though the stipulation had been contained in it."

Upon appeal to the Supreme Court, in the opinion of the court, Ramsey, J., says:

"Although the law will not conclusively presume a secret trust in favor of the mortgagor from the fact that he is left in the possession of the property, yet when such a trust is established it inexorably stamps the transaction as fraudulent and avoids the mortgage. We think no sound distinction either upon principle or authority can be taken between such a case (16 Ohio, 547) and one where the agreement and understanding exists outside of the mortgage at the time it was executed. Indeed to admit such a distinction would be to divest the principle of all vitality and furnish a perfectly easy and facile mode of evading it altogether."

Exactly the same doctrine is held in *Steinart v. Denister*, 23 Wis., 136, where the question was squarely before the court. The Court of Appeals of New York has repeatedly affirmed the foregoing principle. (9 N. Y., 219; 37 N. Y., 595; see also 21 Minn., 191.) This is the law of New Hampshire. Richardson, C. J., says in 3 New Hampshire, *Cobum v. Pickering*, 417:

"It is settled as firmly as any legal principle can be settled, that the fraud which renders void the contract in these cases is a *secret trust.* * * * It is therefore very clear that fraud is sometimes a question of fact, and sometimes a question of law. When the question is, was there a secret trust, it is a question of fact, but where the fact of a secret trust is admitted, or in any way established, the fraud is an inference of law which a court is bound to pronounce."

The appellant in the case at bar insists that there was a secret trust existing between the parties at the time of the execution of the mortgage. That the mortgagor, under the evidence and findings in this case, was at liberty to dispose of the mortgaged property and apply the proceeds to his own use, within the principle of the authorities cited. The appellee cannot urge with force that the parties did not intend to defraud creditors when they entered into this arrangement. They must have intended the natural results of their acts. If this mortgage was fraudulent in its first inception, the subsequent conduct of the parties cannot cure the evil. The fact that Adee paid a portion of the proceeds of the sale of the goods to Harwood, and about $500 worth to Jandt, does not change the nature of the arrangement first entered into between the parties to the mortgage. That arrangement was still existing between them when the attachment was levied and the mortgagor was still at liberty to do what he pleased with the proceeds of the mortgaged property.

What effect did this arrangement between the parties have upon the disposition of the property covered by the mortgage? The court found on page 20 of the record, (V finding of fact) that there was a shrinkage of $800 worth of goods. Nobody explains where they went to; $400 were sold on credit, as the result of this arrangement, (X finding of fact,) and out of $2,900 worth of goods on hand belonging to Adee & Lanning at the date of the mortgage, but $1,100 worth is there, when the attachment is levied, and this between the date of the mortgage December 20th, 1875, and March 27th, 1876, the date of the levy of the writ.

The Supreme Court of Iowa has held that a chattel mortgage is valid, which allows the mortgagor to retain possession of the mortgaged property, sell the same and apply a *fixed amount* to the payment of the mortgage debt, but these decisions are all based upon express provisions of the Statute, as will be found upon examination, which makes the registration of the mortgage equivalent to an absolute transfer of the property. It is supposed to be in the mortgagee's hands. Our Code has no such provision. The object of registration in this Territory is simply to give notice to creditors, purchasers, etc. In reference to this, see *Harter v. William*, 21

Minn., 187; *Robinson v. Elliot*, 22 Wall., 513; *Bank v. Hunt*, 11 Wall., 391; *Meech v. Patchin*, 14 N. Y., 71. In the case of *Robinson v. Elliot, supra,* Davis, J., says:

"But it is insisted that the effect of these provisions (registration laws,) is also to make a mortgage of a stock of goods containing a provision authorizing the mortgagor to retain possession for the purpose of selling in the usual course of trade, *prima facia* valid; and the court cannot, as a matter of law, pronounce it fraudulent. This, we think, is going beyond what the Legislature intended. If registration was intended, as we think it was, *as a substitute* for the delivery of possession, it was not meant to be a protection for all other stipulations contained in a mortgage. If so, it could be used as a cover for any fraudulent transaction, which would have to be treated, on the theory advanced, as valid until the contrary is shown." We call the particular attention of the court to the above opinion.

Whatever may have been the object of the parties in the case at bar, entering into the mortgage transaction, the result was to allow the mortgagor to fritter and waste away a large portion of the property in about three months, that, as the learned Judge says, on page 525, *supra,* is the result of "trust and confidence which, as Lord Coke tells us, are ever found to constitute the apparel and cover of fraud."

We do not believe our Legislature ever intended to make transactions of that nature valid, in simply enacting that the mortgagee should not be entitled to the possession of the property until condition is broken.

This certainly does not mean that the parties to a chattel mortgage can enter into a secret arrangement, not disclosed by the mortgage, allowing the mortgagor to dispose of the property, and no stipulation whatever as to what should be done with the proceeds or any part thereof, and especially a stock of merchandise.

It must be borne in mind that there was no stipulation between the parties that any of the proceeds of the mortgaged property should be applied to the mortgage debt under the findings in the case. This application of the proceeds is an affirmative proposition that must be substantiated by proof and as a fact, must be

found before this court can assume that it exists. Every fact necessary to support the judgment must be found by the trial court. None can be assumed to exist that are not found. The court held in *Campbell v. Buckman*, 49 Cal., 367:

" No express finding is made by the court below upon this question of fact, and the trial having occurred since the taking effect of the Code, no findings can be implied in support of the judgment.' And again in 51 Cal., 483:

" But under our Code of Civil Procedure, as we have repeatedly held, the findings must support the judgment, and no facts in issue will be presumed to have been found, except those which are found."

Assuming the above to be the law, it was absolutely necessary for the trial court to have found that the proceeds of the mortgaged property was to have been applied to the payment of the mortgage debt before this court can assume that such was the agreement between the parties. The appellee cannot now ask this court to assume that this fact was proven upon the trial, was !ound by the lower court, or existed in any shape; indeed, the findings in the case are against him.

" There was no agreement between the mortgagee and mortgagors to pay any of the notes secured by the mortgage before it became due, though there should be sufficient proceeds from sale of goods." And again:

" The sale of the mortgaged stock by the mortgagors, was with the knowledge and consent of the mortgagees."

There can be but one inference drawn from these findings, aided by and considered in the light of the testimony, which is this: That the mortgagors were to go on with the business, and do the best they could, applying the proceeds as they thought proper. The mortgagees reposing in them that " trust and confidence which, as Lord Coke tells us, are ever found to constitute the apparel and cover of fraud."

What would have been the result, had this " shrinkage" of the mortgaged property continued for three months longer? It would have been thousands instead of hundreds of dollars. We have no

assurance that the mortgagee would have interfered; he certainly would not so long as he had " trust and confidence " in the mortgagor. It is very doubtful whether even the liberal Supreme Court of the State of Iowa would sustain that judgment upon these findings.

No one will claim that the mortgage can stand against purchasers; the mortgagors having the right to sell, would confer good title. Certainly the rights of purchasers are no higher than those of creditors. (*Griswold v. Sheldon*, 4 N. Y., 588.)

This doctrine is affirmed in *Bank v. Hart*, 11 Wall., 349, 5 Ohio St., and cases there cited; and under our Code of 1870–71, innocent purchasers and incumbrancers are both considered as having equal rights when affected by fraudulent transactions of this nature.

The appellees now claim that the mortgagor had power to sell the goods from the mortgagee, but was to apply the proceeds to the payment of the mortgage. It must be remembered that he did not request the court to find any fact of this kind, and the court found no such fact. Under the authorities cited, facts not found will not be assumed in support of the judgment. It is, therefore, too much to ask the Supreme Court to supply this deficiency, especially when the plaintiff in the court below testified: " There was no agreement that he was to apply all the proceeds of sales to notes." (Page 18 of record,) and utterly fails to tell us how much, or how little was to be applied, and moreover the mortgagor testifies on page 15 of record, " nothing was said as to what I was to do with the proceeds of goods sold."

How can the Supreme Court now assume that the facts asked for by appellee exist? The evidence conflicting, and no request made of the trial court to find the fact. We have no rule of practice allowing such a proposition.

The failure of the court to find the facts requested by defendant below are *errors of law*, if such facts are pertinent and supported by uncontradicted testimony. (*Gates v. Salmon*, 46 Cal., 372; *Beck v. Sheldon*, 48 N. Y., and cases there cited.)

In this connection we call the attention of the court to the 15th, 16th, 17th, 18th, 19th and 20th assignments of error. Conclusions

of law drawn from findings of fact are also errors of law. (*Gates v. Salmon*, *supra*, 372.)

The appellant herein excepted to each conclusion of law found by the court below, and also to the order for the entry of judgment, and to the judgment.

The appeal is taken, as will be seen upon examination of the assignments of errors, from the judgment, order for its entry, conclusions of law drawn from the findings of fact, failure of the court to find material facts requested to be found as supported by uncontradicted testimony, as well as errors of law in rejecting or allowing testimony to be introduced upon the trial.

It will, therefore, be seen that the errors complained of by appellant are all errors of law, no errors of fact are presented. The evidence is brought up for the purpose of aiding and explaining the findings in the case. Errors of law occurring upon the trial of the cause may be embodied in bills of exception settled after entry of judgment, and reviewed upon appeal *without* a motion for a new trial. (*Caldwell v. Parks*, 47 Cal., 542.)

" Our attention is also called to the fact that the Code of Civil Procedure contains no provision allowing bills of exception to be annexed to the judgment roll, corresponding with section 338 of the late practice act, providing that statements on appeal might be so annexed. We think, however, that this construction of the Code cannot be maintained in view of section 650 already cited.

" There is no doubt that section provides for the settlement of bills of exception, based upon errors of law, occurring at the trial of the cause, and that may be done after entry of judgment roll has already been made up by the clerk, under the provisions of section 670.

" But if the position of the respondent be correct, such bills of exception would be unavailing for any purpose except, perhaps, that of a motion for a new trial. In other words a party relying upon errors of law for the reversal of the judgment would be compelled in every instance, when his bill of exceptions was filed only after the entry of judgment to resort to a motion for a new trial in the court below, before he could present such errors, for review in this court. The Code was designed to simplify proceedings on

appeal, and to facilitate the review of questions, adjudged in the trial court.

"Now, under the practice lately prevailing, it never was required though it was permitted that a party who complained of errors of law, should move for a new trial in the court below, bringing an appeal to the court.

"It was never supposed that it was necessary to show that the court below had committed the same errors of law twice before it could be made a subject of review in the appellate court, and we do not think that such an inconvenient rule of practice has been promulgated by the Code of Civil Procedure." (See also p. 560, of Code of Civil Procedure of the Territory of Dakota, Article VIII.)

It seems unnecessary to cite further authorities in favor of the proposition that the Supreme Court has power to review the alleged errors in the case, without a motion for a new trial.

Those facts requested of the court to find by the defendant below were certainly pertinent, and in conformity to the vital issues in the case, and further, were supported by uncontradicted testimony, particularly the 19th assignment of error, which request is supported by the testimony of appellee. (See p. 18 of record.)

This evidence of appellee, corroborated by the testimony of Adee (pp. 14 and 15 of record,) establishes beyond a question the facts requested of the court to find, contained in the 15th and 16th assignments of error.

In support of the proposition that these several findings of fact requested of the court to find, and failure to find which, are assigned as errors by appellant, are pertinent and directly brought in question by the issues in this case, we would respectfully cite: *Edgell v. Hart,* 9 N. Y., 213; *Russell v. Winnie,* 37 N. Y., 594; Hermon on Chattel Mortgage, 534; *Hawkins v. Hastings Bank,* 1 Dillon, 464.) In the latter case, the Judge says:

"They (the mortgagors) could not sell for their own use; this would have been a fraud upon creditors, and if such permission was given by the terms of the instrument, or agreed and consented to, by parol, the mortgage would be void." (See also *Chopard v. Bayard,* 4 Minn., 553; *Collins and McElroy v. Myers et al,* 16 Ohio, 447.) In the latter case, the Court says:

"That a continuance of possession, with a power of disposition and sale on the part of the mortgagor, either express or implied, is necessarily fraudulent and void against creditors." •

The Court held that in either case the mortgage is fraudulent in law, irrespective of the intention of the parties. (See also *Freeman v. Rossman*, 5 Ohio St., 1.)

The judgment in the case at bar utterly fails to settle all the issues raised, and necessarily put in issue by the pleadings. The court does not render any judgment or settle anybody's title to $600 worth of property.

The court found where the property came from, who claimed title to it, and where it went to, but does not tell us whether either plaintiff or defendant was entitled to the possession of the same. The Judge says in his 5th finding of fact of the goods claimed to belong to Adee & Co.: * * * "The remainder of the goods claimed to belong to Adee & Co., were taken by Adee, and by him sold to one Winters, the said Adee acting as the agent of his daughter," and in the 6th finding of fact: "The goods as turned over to plaintiff by the coroner, except those taken by Adee, as the goods of Adee & Co.," and in the 15th finding of facts: "The goods claimed to belong to Adee & Co., and which were of the value of $600." And in the judgment, the Court says:

"It is, therefore, ordered and adjudged by the Court, that the plaintiff, H. A. Jandt, as trustee, at the time of the commencement of this action, was entitled to the possession of the goods taken under the requisition delivered to the coroner of said Lincoln county, to take the same in this suit, and the value of the goods claimed and held by Adee & Co., * * * and that as to the goods claimed by Adee & Co., the Court renders no judgment." In the 5th conclusion of law, the Court says:

"And with the exception of the property left with Adee, and by him sold, I find for plaintiff on all the issues."

The amount of all this is, if it means anything, that the amount of goods held by the sheriff under his writ of attachment, was $600 worth claimed by a third party never to have been mortgaged; a party who is a stranger to this action. These goods are taken from the sheriff by the coroner under his requisition, and delivered to

the plaintiff below and by him "left with Adee." That is the conclusion of law and judgment, and the findings of fact support this if they support anything. The theory that property can be taken from a defendant in a replevin action by a requisition, turned over to a plaintiff, by him disposed of to a stranger upon his own motion, the whole question be litigated and contested in court by the parties, and that the court need not decide as to the right of either party to the possession of that property, need only be stated to be refuted. This court is in no condition to decide that appellee was entitled to this $600 worth of property by virtue of his mortgage. There are no findings to that effect, and none can be supplied or assumed by this court, and the evidence certainly does not sustain the theory. The finding of facts, conclusions of law and judgment, all support the theory, that "plaintiff abandoned his claim and title to $600 worth of property taken from defendant as not being included in his mortgage."

*Joy & Wright* and *M. B. Davis*, for respondent.

The Supreme Court will not review the facts of a case, unless a new trial was asked for in the court below, and this whether the case be in equity or at law, tried by a jury or by the Court. (See *Griswold v. Sharpe*, 2 Cal., 17; *Liening v. Gould*, 13 Cal., 598; *McCartney v. Fitz Henry*, 16 Cal., 184; *Deputy v. Stapleford*, 19 Cal., 302; *Rice v. Jas. Keep*, 34 Cal., 648.)

The findings of fact in the court below will not be reviewed on appeal, unless there was a motion for a new trial; and this whether the case be in equity or at law, tried by the jury or by the Court. (See *Gayliardo v. Hoberlin*, 18 Cal., 394; *Allen v. Fennon*, 27 Cal., 68; *Burnett v. Pacheco*, 27 Cal., 409; *Duff v. Fisher*, 15 Cal., 375; *Loboch v. Hotchkiss*, 17 Abb., 88.)

But should the Court conclude that it can review the evidence and findings in this case without a motion for new trial having been made, we urge that the judgment below is correct and consistent with reason and sustained by the evidence and the law.

The first point made by appellant in his argument is, that the mortgage in question is void upon its face, for the reason that it seeks to cover subsequently acquired goods, and impliedly gives to the mortgagor the right to sell from the stock.

The Statute of Dakota Territory recognizes and gives the right to make an agreement, creating a lien upon subsequently acquired property, and not then in existence. (See Revised Code, §1704, p. 457, which is the same Statute in force when the mortgage in question was given; see § 1589, Laws 1870 and 1871, Laws of Dakota Territory.)

The Statute clearly authorizes such contracts, but independent of Statute, we have the almost unanimous voice of the courts, State and federal, holding that such contracts are proper and will be sustained.

The mortgage was filed for record the 20th of December, 1875, in accordance with the laws of the Territory. But before we cite authority upon this point, let us refer to the testimony to ascertain if there was any subsequently acquired property; if there was none, then appellant cannot complain, for he could be in no manner prejudiced by that clause in the mortgage.

The witness, Horace Adee, on page 14 of abstract, testifies "no goods were purchased after execution of the mortgage in the name of Adee & Lanning," and to contradict this statement there is no testimony whatever, and with the fact substantiated and not denied, of what avail is the argument that our mortgage is void, because it was drawn to include subsequently acquired property?

But if property was subsequently acquired and plaintiff seeks to hold it under the mortgage, he has under the law and the authorities a perfect right so to do, and the mortgage is not void as against creditors. "It seems that mortgage of chattels may be made to cover future acquisitions, and that the right of the mortgagee therein will be enforced against all persons having notice." (See *Schesfender v. Bishop*, 35 Iowa, 60; *Brown v. Allen*, 35 Iowa, 306.)

We call the court's attention to the very elaborate case of *Brett v. Carter*, United States District Court, District of Massachusetts, cited in Central Law Journal, 1876, Vol. 3, p. 286; *Brett v. Ellett*, 19 Wall., 544; *Morrill v. Noyes*, 56 Maine, 458; *White v. Thomas*, 52 Miss., 49.

A chattel mortgage of a stock of goods, giving the mortgagor authority to sell at retail in the ordinary course, and which requires him to keep up his stock of like goods to a specified amount,

and which covers in addition to the goods therein specifically described, all the stock the mortgagor should have from time to time, is valid, and authorizes the mortgagee to seize and subject to sale, goods purchased and added to the stock subsequent to the giving of the mortgage. (See *Leland v. Collver*, 34 Mich., 418; *Philadelphia, Wil. & Bal. R. R. Co., v. Wadefper*, 64 Penn.; *Otis v. Stile*, 8 Barb., 102.)

But even in the cases where it is held that a mortgage cannot be executed to cover after acquired property, the courts universally hold that the mortgage is not invalid as to the property then owned by the mortgagor, but sustain the mortgage as to such property, and hold that the clause in the mortgage, so far as it seeks to cover after acquired property, is inoperative. (See *Mory v. White*, 21 Wis., 417; *Chynownth v. Tenney*, 10 Wis., 397; *Single v. Phelps*, 20 Wis., 398.)

In the case of *Levy v. Welch*, 2 Ed., ch., p. 438, the court held that a chattel mortgage of all the mortgagor's stock in trade, which they then owned or which they might own at any time before final judgment of the debt on the mortgage, the mortgagor to retain possession, is good as against creditors, for the stock then owned, and for such as was purchased with its proceeds. (See *Garner v. McEwen*, 19 N. Y., 123; *Wagne v. Watts*, 2 Cranch, C. C., 168.)

But in this connection let it be remembered that the firm of Adee & Lanning did not purchase (as the testimony discloses) any goods after the execution of the mortgage, and hence this branch of the argument, made by appellant, has but little if any force. But it is argued by appellant that the mortgagor retained the possession and sold the goods. The mortgage itself contained no such provision, but the mortgagee could take possession on default, etc., and foreclose the mortgage by notice and sale.

If there was any agreement that the mortgagor could retain possession and sell the goods, the questoin arises, was there any fraud practiced or intended, or was it done to defraud creditors? The court below found there was not.

The mortgage was given to secure to the creditors of Adee & Lanning the payment of honest debt. Upon this point there is no question.

Jandt, H. A., testifies on page 18, that "the proceeds of the sale of goods were to be applied to the payment of notes secured by mortgage."

On page 11 he says: "Several payments were made upon these notes." It is apparent from the testimony that it was the understanding between the parties that the proceeds were to be applied in the payment of these notes. If Adee & Lanning did not apply it all, that fact does not and should not defeat or in any way affect the mortgage or plaintiff's right under it. No fraud is shown in fact, and nothing that would even raise the suspicion of fraud, and fraud can never be presumed. It must be clearly proven.

"A chattel mortgage under which the mortgagor retains possession and power to dispose of the mortgage property, is not fraudulent in law." (*Torbert v. Hayden*, 11 Iowa, 435; *Kuber v. Grover*, 9 Iowa, 303; *Campbell v. Leonard*, 11 Iowa, 489; *Hughes v. Corey*, 20 Iowa, 399.)

In the last case *supra* the court by Dillon, J., delivered an elaborate opinion and held, "that a reservation by the mortgagor of the right to sell before default in the usual course of retail trade, and a reservation by the mortgagor of the right to retain in his hands the avails of the sale; thirty per cent. of the same to be applied on the notes secured by the mortgage, does not render the mortgage fraudulent." This opinion discusses fully and clearly and is unanswerable, and we respectfully refer the court to the case, trusting that it will be examined fully and thoroughly.

"It is now held that a mortgage of chattels may contain a clause which authorizes the mortgagor to retain the possession of the mortgaged goods until the mortgage became due, and that such claim is valid as against creditors." (*Fairbanks v. Borden*, 1 Hill., 128; *Hall v. Cornely*, 1 Kernan, 501; *Fish v. Mott*, 7 Tiffany, 253; *Fairbanks v. Bloomfield*, 5 Duer, 437.)

"An agreement between the parties to a chattel mortgage which covers a stock of goods in a retail store, that the mortgagor shall keep possession of the goods, and go on and sell the goods for cash, which is to be paid over to the mortgagee and applied on the mortgage debt, does not render the mortgage void as a matter of law." (See *Ford v. Williams*, 10 E. P. Smith (N. Y.) 359.)

The following cases are directly in point, and we cite them without quoting from them, and an examination of them will satisfy the court that they are quite as strong as those above quoted. (*Brett v. Carter*, cited *supra; Hughes v. Cory*, 20 Iowa, cited *supra; Gay v. Bidwell*, 7 Michigan, 519; *Fry v. Russell*, 35 Mich., 229; *Leland v. Collver*, 34 Mich., 418; *Miller v. Lockwood*, 32 N. Y., 293; *Kleine, H. & Co., v. Katzenberger*, 20 Ohio St., 110; *Oliver v. Eaton*, 7 Mich., 108.)

The appellant urges that section 1919, of the Code of 1870 and 1871, makes a mortgage of this character presumptively fraudulent.

We submit that the above section does not apply to mortgages, and was never intended to apply. The Statute of the Territory makes due provision for the registration of mortgages, and provides that when registered, all persons shall take notice of it.

Section 1620, of the Code of 1870, specially provides that the mortgage of personal property does not in, and of itself, entitle the mortgagee to the possession of the property.

The record of the mortgage, under the registration law is equivalent to the delivery of possession, and such provision as to recording instruments is made for the purpose of protecting parties where delivery of possession is not made, and it is too late now to cite such authority as Twynn's case, which has virtually become obsolete. (See case *Brett v. Carter, supra*, on this point.)

But even if such a mortgage is presumptively fraudulent, has not all suspicion even of fraud been overcome. If it had been proven that there was nothing due plaintiff, and he had taken the mortgage to enable Adee & Lanning to perpetrate a fraud, and to prevent their creditors from collecting their debts, the appellant's argument might apply. But on the other hand, it is shown without a doubt that the mortgage was given to settle with and secure the creditors of Adee & Lanning—N. B. Harwood & Co. being at the same time provided with collateral to secure their claim. With the evidence disclosing that Harwood & Co. have received some $600 in cash on their judgment, and holding collateral sufficient to pay all that is due them, the cry of fraud by appellant comes with poor grace. There is no fraud shown in fact and none can be inferred from the record, nor can any be presumed.

Appellant next urges that the Court erred in refusing to find "that the plaintiff abandoned his claim and title to $600 worth of property taken from defendant as not being included in the mortgage," and that the judgment is erroneous "because it fails to dispose of all the issues in the case."

Defendant represents an attaching creditor and has the same rights, and no other in the goods attached than the firm of Adee & Lanning had at the time of the attachment.

The sheriff attached the goods of Adee & Lanning in the store building occupied by them. These goods were covered by the mortgage by its express terms. Then all the attaching creditors could get would be a lien upon the surplus in the hands of the trustee after satisfying the mortgage debt and costs of sale.

The sheriff attached the goods of Adee & Lanning in the store building, and the coroner under the writ of replevin, took the goods. Now, if the goods replevied were in fact the goods of Adee & Lanning, it will not be denied but that they were covered by the mortgage in express terms, and the mortgagee was entitled to the possession thereunder; but it is said that some of the goods in said store did not belong to Adee & Lanning, but to the firm of Adee & Co. If this is so, the defendant clearly could not attach them to satisfy a claim against the firm of Adee & Lanning, and as a matter of fact, only attached the goods of Adee & Lanning, and if it be true that any part of the goods replevied belong to Adee & Co., defendant has no interest in them under the attachment. There is no proof here that either member of the firm of Adee & Co., was a member of the firm of Adee & Lanning, and clearly if not their goods, were not liable to defendant's attachment, and were not so liable in any event; while the plaintiff's right to take the goods under the mortgage is clear, for it is a well settled rule of law, "that when a party purposely so mingles his own goods with those of another, that they are not susceptible of identification, the owner of the goods with which such goods are mingled may take the whole." (See 2 *Blackstone's* Com., 405; *Colville v. Reeve*, 20 Campbell, 576; 2 Kent's Com., 364; *Williard v. Rice et al*, 11 Metc., 493.)

The goods of Adee & Co. had been by Adee & Co., placed in

the store with the goods of Adee & Lanning, and mingled with them. This clearly could not defeat the rights of the mortgagee, and if the other goods were blended and mingled with them, he might take the whole. So the authorities clearly hold. What Adee & Co's. right might be in equity upon a proper case made, we need not here discuss. In this action the only question is, had plaintiff the right of possession at the time of the commencement of this suit? If so, Adee & Co's. rights, if any, must be settled in some other action.

But counsel insist that $600 worth of goods were turned over to Adee by the trustee. Such are not the facts, and the testimony does not so disclose.

The property was replevied and turned over to plaintiff. When he came to sell under the mortgage there were certain goods in the store in regard to which there was a dispute. Adee & Co. claimed them. These were not sold by the trustee, but were never turned over to Adee & Co., or any one else. Plaintiff is still entitled to the possession of them, and the fact that he chose not to complicate matters still further by the sale of goods claimed by Adee & Co., certainly amounts to no surrender of the property to Adee & Co., and the whole argument of counsel is based upon an unwarranted assumption, and as we have before suggested what may be the ultimate rights of the parties, this court cannot now determine.

That the goods were so mingled is an undisputed fact; that plaintiff might take possession of the whole stock under the law, when so mingled is equally clear. What his right may be in the goods claimed by Adee & Co. is not now before the court; that he has the right of possession is clear, and that is as far as we need now go.

The goods sold by plaintiff brought the sum of $1,400; this, after deducting the costs of sale, leaves a large balance upon these notes, and a sum largely in excess of $600; and even if plaintiff had wrongfully abandoned that amount of goods, and the testimony so disclosed, (which it does not,) that fact would not avail defendant, since he would and could have no interest in or claim to any of the mortgage property, until all of the claim held by

plaintiff was paid. If the $600 worth of goods was negligently permitted to be removed, and plaintiff had a lien thereon, and there is more than $600 due the plaintiff, the effect only would be that plaintiff would have to credit the amount on his claim, but the facts as to the ownership of that property is not now before the court.

We further submit that the appellant is not, under the pleadings and issues, in a position to urge anything with reference to the disposition of goods claimed by Adee & Co. There is no allegation or claim made in the answer that plaintiff had not sold or accounted for all the goods seized under the writ of replevin and turned over to plaintiff under the mortgage, and all evidence upon that point was irrelevant, and the appellant cannot under the issues tendered by him claim anything upon this point.

If the defendant is held to be entitled to the possession of the property replevied, it must be by virtue of the right acquired under the levy of the attachment. The courts have repeatedly held that the mortgagor has no interest in the chattels mortgaged that is subject to attachment, and especially so when the attaching creditor does not first come in and tender the amount of the mortgage debt. (See *Campbell v. Leonard*, 11 Iowa, 480; *Gordon et al v. Hardin*, 33 Iowa, 550; *Commings v. Tovey*, 39 Iowa, 197.)

In the case of *Campbell v. Leonard, supra*, the Court says: "The authorities are abundant, in the absence of statute that would authorize it, that goods mortgaged for a debt cannot be taken on execution against the mortgagor, until the money is paid or tendered to the mortgagee." (See 1 Pick., 309; 4 Mason, 604; 2 N. H., 13; *Howland v. Willett*, 3 Sanders, 607; *Mattison v. Bankus*, 1 Comst., 295; *Galen v. Brown*, 8 E. P. Smith, 371; *Stewart v. Slate*, 6 Denio, 84.)

Appellant urges that the retention of the possession and disposal of the goods was inconsistent with the purposes for which the mortgage was given. How is this shown? The terms of the written instrument—the mortgage—must settle the rights of the respective parties thereto, and from this clearly there is nothing giving the mortgagor the right to dispose of the property for their own benefit, and if we look to the oral testimony, the position of

counsel is not sustained. Jandt (plaintiff) testifies clearly and emphatically that the proceeds arising from the sale of the goods were to be applied in the payment of the note secured by the mortgage, and as we have seen from the authorities cited, this is a proper and legitimate transaction.


BARNES, J.—This is an action by the plaintiff, the owner and holder of a chattel mortgage covering certain personal property described in the complaint; against the sheriff o! Lincoln county, who had attached and taken possession of the property in an action brought by certain creditors of the mortgagors. The action was tried by the District Court of Lincoln county, a judgment recovered in favor of the plaintiff, and from that judgment an appeal is taken to this court.

The answer of the defendant, after alleging the taking of the goods as sheriff of Lincoln county by virtue of an attachment, further avers, that the chattel mortgage, under which the plaintiff claims is void as to creditors, and therefore the plaintiff is not entitled to the possession of the goods.

We see no reason for holding the chattel mortgage void as to creditors, and was that the only question presented on this appeal the judgment appealed from would be affirmed.

We will not, however, discuss this question at length. As for other reasons herein specified the judgment of the Court below must be reversed and a new trial ordered..

The plaintiff claims the possession of the property and damage for withholding possession from him. Our Code of Civil Procedure authorizes a recovery of damages by the prevailing party for the wrongful taking and detaining personal property. (See the case of *Holt v. Van Epps*, and authority there cited,) * decided by this court at the December term, 1875.)

It may be proper here to remark, owing to the confused manner in which the case at bar is in this court, we have some difficulty in determining precisely to what extent we may properly examine

* 1 Dak. Rep., 206.

the papers and proceedings sent up by the District Court on this appeal. There is no certificate of the presiding Judge that the bill of exceptions contains all the evidence submitted in the court below, or so much thereof as is necessary to be considered by this court in passing upon the questions presented by the bill of exceptions.

Upon page 11 of the bill of exceptions the following question is propounded to H. A. Jandt, a witness on the stand :

"State what damage, if any, you sustained by the detention of the property ?"

The question seems to have been proper. The answer not responsive, and clearly objectionable. We give the answer, which is as follows :

" It required one of the firm to attend to the case, whose expenses were fourteen or fifteen dollars, and his loss of time to the firm was three days, valued at ten dollars per day, and the expenses of an attorney fourteen or fifteen dollars."

This evidence was especially objected to, the objection overruled, the evidence allowed to stand, and to this ruling an exception was taken.

The thirteenth finding of fact is in these words: "The plaintiff has been damaged by reason of the loss of time and money expended in pursuit of the property, in the sum of one hundred dollars."

In the sixth conclusion of law we find this language: "The plaintiff is entitled to judgment against defendant for the possession of the property by him taken and sold, and to one hundred dollars damages as compensation for time spent and money actually expended in the pursuit of said property."

Now, while this court would not reverse the judgment of the court below, because of the insufficiency of the evidence to support the finding, without the certificate of the court below that the bill of exceptions contained all of the evidence, this court will review the objectionable testimony bearing upon a single question in connection with the finding of fact and conclusion of law based upon that finding. (The finding of the court below being properly here upon the record.) And when it clearly appears as in this case, that the evidence was improperly received and that the finding of

fact was based upon that improper evidence, and that the conclusion of law upon that finding of fact was erroneous, this court will reverse.

Applying the rule here indicated to the case at bar, and it clearly appears that the District Court allowed the prevailing party thirty dollars for three days' time attending upon the case, and fourteen or fifteen dollars for his personal expenses during the same time, and fourteen dollars for expenses of attorney. There is also the testimony of the witness, G. C. Moody, which taken in connection with the findings of the court, shows unmistakably that one hundred dollars damages were awarded the prevailing party for the three days' time and personal expenses in attendance upon the trial and for attorney or counsel fees.

On page 581, section 377, Revised Statutes, we find this provision: "The amount for attorney, solicitors and counsel in civil and criminal actions must be left to the agreement, express or implied of the parties. Section 378 of the same page, is as follows: "When by the terms of any written instrument it appears that the débtor has made a written contract for the allowance of attorney's fees, the same must be allowed by the court in conformity to the instrument, and must form a part of the judgment and be incorporated therein."

In this Territory the prevailing party cannot recover attorney's or counsel fees, unless there be an agreement or contract, express or implied, to pay the same. Does the Statute authorizing the recovery in an action for the wrongful taking, or detention of personal property of damages for the detention, change the rule? We think not. The general rule as to damages in tort, actions or actions not founded upon contract, is the value of the property wrongfully taken at the time, or at any time before recovery. When the action is for the recovery of specific articles of personal property wrongfully taken in addition to a recovery of the property the prevailing party may recover damages for the wrongful detention. The reasons for this provision are apparent. It will often occur that the prevailing party has sustained damage in being deprived of the use of his property by the decrease in the value of the property while deprived of its possession, or the prop-

erty may have been injured or damaged while the prevailing party was deprived of his right of possession. In these and like cases, damages for detention would be recoverable. We see no more propriety in allowing the prevailing party in this action, compensation for personal expenses, payment for his loss of time in connection with the prosecution of the action, and for attorney's and counsel fees, than in an action on contract, an action for trespass, or any personal action. It could not have been the intention of the Legislature in giving compensation to a prevailing party in the way of damages for the wrongful detention of his property to authorize the successful party to recover for personal expenses, loss of time, expenses of an attorney, as well as counsel and attorney's fees. Should this court sanction or sustain the allowance of items of this kind, may we not reasonably expect to be called upon to sanction an allowance for injury to feelings, or for mental anxiety of the aggrieved party, by reason of the wrongful detention of his property.

Items of this class having been allowed to the prevailing party amounting in the aggregate to one hundred dollars, the judgment in the court below must be reversed and a new trial ordered. If this was the only error, possibly this court might reverse as to the thirteenth finding of fact, and as to a part of the sixth conclusion of law, and affirm as to the rest of the judgment.

In the action of *Dole v. Burleigh*, 1 Dak., 227, this court held, that the failure of the court below (where the action was tried by the Court) to find or pass upon all the material issues is error, for which this court will reverse judgment.

In the case of *Holt v. Van Epps*, 1 Dak., 206, this court held, in an action tried by jury, that a verdict which finds but a part of the issue and says nothing as to the rest, is insufficient, because the jury have not tried the whole issue, and for this reason the verdict will not sustain the judgment.

In the case at bar we have sent up to this court from the District Court, the statement of the presiding Judge, that for want of testimony, the District Court was unable to find and determine the rights of the parties, as to about six hundred dollars worth of the goods embraced in the issue in this action, and will therefore leave the defendant to his remedy upon the bond.

If the court below, after having heard the testimony, could not find upon a material issue, the duty of this court is plain. The judgment must be reversed, the case remanded to the District Court for re-trial.

The parties to this action presented certain issues for trial which have only in part been tried. When the issues there presented have been tried in the District Court, and final judgment pronounced thereon, then, in a case properly presented, this court will review the judgment of the District Court.

Judgment reversed with costs, and a new trial

ORDERED.