Seeman v. Feeney.

THEODORE SEEMAN

*vs.*

THOMAS FEENEY.

In an action to recover damages for the alleged wrongful taking by the defendant from the plaintiff's possession of a horse belonging to the plaintiff, the court instructed the jury, that if they found that "the defendant took the horse wrongfully, without any authority, and not by mistake, the jury may award to the plaintiff such further reasonable sum, in

addition to the value of the horse, as will compensate the plaintiff for the expenses of the suit, and as will be an example or warning to others taking property under like circumstances, that they will not be relieved by payment of the market value of the property taken." *Held*, to be erroneous, not only as authorizing the jury to give the plaintiff compensation for the expenses of the suit, without any allowance for the taxable costs and disbursements, but as not stating a case for the allowance of exemplary damages.

The malice which will justify exemplary damages, is not merely the doing of an unlawful or injurious act. The word implies that the act complained of was conceived in the spirit of mischief, or of criminal indifference to civil obligations.

The defendant appeals from a judgment of the district court for Olmsted county. The action was in the nature of trespass *de bonis asportatis*, and as the only question discussed in this court, is as to whether the court below erred in its instruction to the jury in regard to the measure of damages, and such instruction is given at length in the opinion, further statement is unnecessary.

P M. TOLBERT, for Appellant, cited the following authorities :

*Houghton vs. Carpenter*, 40 *Vt.* 588; 1 *Chitty's Pleadings*, (*marginal page*,) 166; *Sedgwick on Damages, p.* 39; *Lynd vs. Picket et al.* 7 *Minn.* 200; *Phila. W. & B. R. R. v. Quigley*, 21 *Howard* (*U. S.*) 202; *Devins vs. Rand*, 38 *Vt.* 626; 1 *Dillon's Circuit Court Rep.* 67; *Merrill vs. The Tariff Maf'g Co.* 10 *Conn.* 387; *St. Peter's Church vs. Bench*, 26 *Conn.* 357; *Platt vs. Brown*, 30 *Conn.* 342; *Gen. Stat. p* 497, *sections* 2 *and* 3; *White vs. Webb*, 15 *Conn.* 305; *Oveatt vs. Pond*, 29 *Conn.* 485.

W. P. CLOUGH, for Respondent, cited the following authorities :

*Sedgwick on Damages* (3d ed.), *p.* 558; *Stickney et al. vs.*

*Smith et al.* 5 *Minn.* 486 ; *Brimhall vs. Van Campen,* 8 *Minn.* 13 ; *Finney vs. Callender, Id.* 41 ; *Finley vs. Quirk,* 9 *Minn.* 194 ; *Lynd vs. Picket,* 7 *Minn.* 203.

*By the Court.*—Ripley, Ch. J.—This is an action in the nature of an action of trespass *de bonis asportatis.* The plaintiff's complaint is, in brief, that the defendant " wrongfully, forcibly, and against the will of the plaintiff," took from his possession a horse, " then and there the property of the plaintiff," of the value of $200, to his damage the sum of $250.

The court below instructed the jury, that if they should find " that the defendant took the horse wrongfully, without any authority, and not by mistake, the jury may award to the plaintiff such further reasonable sum, in addition to the value of the horse, as will compensate the plaintiff for the expenses of the suit, and as will be an example or warning to others taking property under like circumstances, that they will not be relieved by payment of the market value of the property taken."

By this charge the verdict in the case supposed is to answer these several ends, viz.: to indemnify the plaintiff for the value of his property so taken ; to reimburse him for the expenses of the suit, and to deter others from similar actions by the example afforded in the punishment of the defendant.

The jury are not merely told, as the plaintiff suggests, that in the infliction of punitory damages they may go as high as the expenses of the suit.

If the jury acted upon the instruction, and thought that the amount of plaintiff's expenses would be sufficient to serve as an example, they would give that amount, and no more ; but if they did not, they might go as much higher, in reason, as should seem to them necessary to accomplish the object. In either case, the expenses of the suit would be included in the

verdict, that is to say, the expenses without any reference to the taxable costs and disbursements ; for the instruction contains no qualification whatever on that point, and the jury could not have understood that they were to make any allowance for them.

To the extent thereof, the defendant would pay twice over. An instruction which would produce such a result would certainly be erroneous. *Platt vs. Brown*, 30 *Conn.* 336.

Nor does the instruction state a case which would warrant the jury in giving exemplary damages. This court has heretofore adopted the rule as laid down by Sedgwick, that exemplary or punitory damages may be given, where fraud, malice, gross negligence, or oppression, mingle in the controversy. (*Lynd vs. Picket*, 7 *Minn.* 184, *p.* 200.) The court in that case held that the seizure by defendant, upon a writ of attachment, of plaintiff's exempt property, knowing it to be exempt, was evidence of malice that would justify the giving such damages. The court also cite the language of Chief Justice Shaw in *Wills vs. Noyes*, 12 *Pickering*, 324, that whatever is done willfully and purposely, if it be at the same time wrong and unlawful, and that known to the party, is in legal contemplation malicious. But neither that case nor that language support this instruction. If the horse was lawfully in plaintiff's possession, and defendant took it without his authority, that would be a wrongful taking, whether by inadvertence or design ; or whether the defendant supposed himself authorized to take it or not.

The plaintiff, however, contends that the words "and not by mistake," make the instruction tantamount to a statement that the jury might give exemplary damages if they found that the defendant took the horse wrongfully, knowing it at the same time to be the plaintiff's. But the construction is clearly inadmissible. The natural meaning of the words is

Seeman v. Feeney.

that the defendant knew what horse he was taking. It would be a forced construction, to hold them to mean that the defendant had a positive knowledge of the legal relation of the plaintiff, as well as of himself, to the horse.

Nor does it seem possible that the district judge, who had excluded all the evidence offered by defendant to show that the horse was his, would have used the words "not by mistake" to express any such idea, instead of stating it in direct and appropriate language.

Supposing, however, that they could be stretched so far; still the instruction leaves out the element of defendant's knowledge that the taking was wrongful.

The horse might be the plaintiff's, and the defendant might know it. The taking might be for any cause wrongful, for instance, it might be without plaintiff's authority, and yet the defendant might suppose that under the circumstances he was justified in taking it into his possession.

To bring the case within *Lynd vs. Picket*, the jury should have been instructed that they might give such damages, if they found that the defendant willfully and purposely took the horse, knowing that it was plaintiff's, and that he had no right to take it. In other words, the instruction ignored the defendant's intent and motives, which are always material in the question of exemplary damages.

"The malice spoken of in this rule is not merely the doing of an unlawful and injurious act. The word implies that the act complained of was in the spirit of mischief, or of criminal indifference to civil obligation." *Phila. &c. R. R. vs. Quigley*, 21 *Howard*, 202.

The above quotation sufficiently shows how far the instruction is from stating a case to justify the giving of such damages.

The plaintiff conceives that upon the facts the defendant's conduct was without a shadow of excuse. That it was legally

inexcusable, may be admitted, yet, at the same time, we think' upon the whole case, there are grounds for supposing that he thought himself justified in retaining the horse.

As the instruction was erroneous as to the expenses, and might have misled the jury upon the point of exemplary damages, there must be a new trial. It is true that the case finds, that after deliberation the jury returned into court, and delivered to the court a verdict in writing, as follows: "We the jury find a verdict for the plaintiff of $75, for the horse, and $25 exemplary damages," but before it was read to them, or entered in the records, it was in their presence changed by the court so that it read as follows, to-wit : " We the jury find a verdict for the plaintiff, and assess his damages at $100," which was then and there read to them, and they were informed by the court, that if they agreed to it as changed, it could stand as their verdict, or if not, they should retire again, when they all stated that it was their verdict ; and it was there recorded, and read to them as recorded ; and being asked if it was their verdict, they responded in the affirmative.

The verdict as recorded is the only verdict of which we can take notice. We cannot assume by reason of what took place previously, that the sum of $25 thereof, represents the amount therein given for exemplary damages, and, therefore, we cannot allow the plaintiff to retain his verdict, upon remitting that sum, or upon remitting the amount of the taxable costs and disbursements.

Some questions arise upon the rulings of the court at the trial upon the admissibility of evidence, which it is not necessary to consider in detail, as the evidence upon another trial may not be the same.

We discover no error in respect to the rulings aforesaid, for which we should have felt it our duty to order a new trial.

. New trial ordered.