## BURKE v. CUTLER *et al.*

78  299.
141  517

1. **Officers de Facto:** PRESUMPTION AS TO LAWFUL APPOINTMENT: EVIDENCE. All public officers who are proved to have acted as such are presumed to have been duly appointed to the office until the contrary is shown. (*Londegan v. Hammer*, 30 Iowa, 508.) And in this case, though the law in 1868 required the appointment of a deputy clerk to be filed with the county judge (Rev., sec. 642), and though no such paper is now found on file in the proper office, yet *held* that the evidence (see opinion) shows that one R. did act as deputy clerk of Sioux county in 1868; wherefore the presumption must be indulged that he was duly appointed, and that the paper evidencing that fact has been lost from the files of the proper office.

2. **Tax Sale:** REDEMPTION : EVIDENCE : FAILURE OF OFFICERS TO MAKE ENTRIES. The failure of the county officers to make the required entries of the redemption of land from tax sale will not defeat the rights of the redemptioner, and the presumption against redemption arising from the absence of such entries will not prevail against satisfactory proof of the fact of redemption by other evidence. (See *Fenton v. Way*, 40 Iowa, 96.)

3. ———— : VOID DEED : ADVERSE POSSESSION : STATUTE OF LIMITATIONS. The special statute of limitations relating to tax titles does not apply to a claim made under a tax deed which is void (*Nichols.v. McGlathery*, 43 Iowa, 189); and where an action by the holder of the patent title was begun to quiet his title fourteen years after the void deed was made, during the first seven of which the land was vacant, and during the last seven only it was occupied by the claimant under the void deed, *held* that the action was not barred by the general statute of limitations, because the adverse possession was for less than ten years—the possession being presumptively in the holder of the legal title while the land was unoccupied. (See *Patton v. Luther*, 47 Iowa, 236.)

4. ———— : ———— : POSSESSION UNDER AND IMPROVEMENT IN GOOD FAITH : REDEMPTION : DELAY : EQUITY. The land involved in this case was sold for the taxes of 1866 in 1868, and, notwithstanding redemption was made by the owner of the patent title, no entries thereof were made upon the proper records, and a tax deed was issued in 1871. Under this tax deed the defendants entered upon the land in 1878, and have resided thereon ever since, making valuable improvements thereon, all of which they have done in good faith, and with no knowledge of any defect in their title. In 1885 the holder of the patent title began this action to quiet his title. After the original holder of the patent title (plaintiff's grantor)

learned of the issuance of the tax deed, and learned that his title was questioned—he being a resident of a distant state—he made default in the payment of his taxes, but prior to that time he had paid them promptly; and by this default, and by the delay in bringing this action, it is claimed that plaintiff is estopped from now questioning the tax title; but *held* that, while the rule is recognized that equity will interfere to prevent the prosecution of stale demands, this is not a case within the rule, and that, with a proper accounting for the taxes paid by defendants, and for the improvements made by them, equity will be more nearly obtained than by absolutely divesting plaintiff of the land without compensation.

*Appeal from Sioux District Court.* — Hon. C. H. Lewis, Judge.

FILED, OCTOBER 4, 1889.

ACTION to quiet the title of certain lands in Sioux county.

*Pitts & Kessey*, for appellant.

*Joy, Hudson & Joy*, for appellee.

GRANGER, J.—I. The issues involve the validity of the title to one hundred and sixty acres of land in Sioux county. The title of the land passed originally from the government to Otis B. Wheeler in 1859. Wheeler conveyed the land to the plaintiff in October, 1884, by special warranty deed. On the third day of August, 1868, the premises were sold for the taxes of 1866 to William H. Gurley, who received a deed therefor, in 1871, from the treasurer of Sioux county; and the defendant W. P. Cutler is the owner of the title conveyed by such treasurer's deed, and became such about May, 1878. Since that time he has been in open, actual and visible possession of the premises, and still is, and has cultivated the same during such time, and has made valuable improvements thereon. Plaintiff avers the invalidity of this tax deed on several grounds, and, among them, that Wheeler, the then fee-title holder,

1. OFFICERS de facto: presumption as to lawful appointment: evidence.

redeemed from the tax sale on the sixth of October, 1868. Defendants deny the fact of the redemption, and to our minds it is a controlling question in the case. At the time of the alleged redemption, one B. M. Morse was clerk of the district court, and, by virtue of his office, clerk of the board of supervisors, and the officer with or through whom such redemptions should be made. As we understand from the testimony, in October, 1868, the clerk occupied a room jointly with the treasurer of the county. The plaintiff presents in evidence a certificate of redemption of the land in question, bearing date October 6, 1868, regular in form, and as to which no question is made other than that it does not bear an authentic signature. The signature to the certificate is evidently made by one M. N. Reamer. The original certificate is before us, and the true character of the signature is not easily understood. From its appearance we judge that Reamer first signed as clerk, i. e., "M. N. REAMER, Clk.," and then sought to change the form of signature, and wrote before his own initials the letter "B.," and over the word "Reamer" the word "Morse," but in so doing he leaves his own initial, "N.," in the name, and below are the words, "Deputy, M. N. REAMER." If we are correct in this, the form of signature would be, "B. M. N. MORSE, Clk. Deputy, M. N. REAMER." In such a case it would appear clearly that the "N." was left in the name of Morse by mistake or omission to erase in making the correction. In argument, there is no contention but that Reamer made the signature to the certificate; but it is contended that Reamer had no authority, and the argument deals with his official position at that time in the office of the clerk of the district court, and his authority to make the signature.

The depositions of Reamer have been twice taken in the case. His testimony shows that in October, 1868, he was chairman of the board of supervisors of Sioux county, and there is testimony showing that he was acting as recorder of the county. The testimony shows that in 1868 there were but few residents in the county;

that the official business of the county was very light, and among the different officers quite an interchange of duties as to the work. The testimony quite clearly shows that Morse, the clerk, was absent from his office much of the time, and that in the fall of 1868 he was absent some two weeks, and that during his absence others did the work of the office for him. No record showing the appointment of Reamer as deputy clerk is to be found, and at that time the law required the appointment to be filed with the county judge. Revision, 1860, sec. 642. The law at that time made it the duty of the clerk to appoint a deputy, and hence we have a case where it was the duty of the officer to appoint a deputy, but no record of the appointment. We are, then, left to other evidence as to the fact of the appointment. Reamer, in his testimony, says he does not remember of being appointed, or of acting as deputy for Morse, nor has he any recollection of the certificate in question. He does not profess to be positive, but says he has no recollection on the subject. He says, if his signature is attached to the certificate as deputy clerk, he was such deputy when he placed it there. The following is a part of his testimony bearing on the subject of his acting as deputy clerk: "*Question.* State whether or not Bartlett M. Morse, prior to October 7, 1868, directed, requested or authorized you to affix the seal of the clerk of the district court of Sioux county to any redemption certificate. *Answer.* He may have done so, but I do not now recollect it. I do not now have any recollection of doing so; but, if I did affix the seal to any certificate, I was legally authorized to do so. *Q.* If you did issue any certificate of redemption for said land in October, 1868, then state why you did not mark up the tax-sale register, so as to show that the same was redeemed. *A.* No doubt I could have told all about it at the time; but this occurred nearly seventeen years ago, and I do not remember about it now. *Q.* If you had issued any such certificate as deputy clerk, would you or would you not have marked up the redemption of the same upon the tax-sale register? State the facts.

*A.* I should have done it as near right and proper at the time as I knew how. I might have made the entry on the register, or might have left it for Morse to make. *Q.* State whether or not B. M. Morse had, prior to the eighth day of October, 1868, requested, directed or authorized you to sign his name as clerk of the board of supervisors of said county to any redemption certificate, or any other legal document. If so, when? *A.* I do not remember that he had. I can only say that, if I ever did sign his name to any document as clerk, I was authorized to do so. As I stated on previous examination, I do not remember of acting as clerk or deputy clerk at that time, but I cannot say positively. *Cross-examination.* There was but one safe in the office, and, if I remember rightly, it was used by both Brown and Morse. If I had received redemption money while acting as deputy clerk in the fall of 1868, I certainly would have placed it with the proper custodian, or put it in the safe. It is possible, if I did act as deputy clerk in the fall of 1868, that I may have received money for the redemption of lands, and turned it over to Brown or Morse. It is possible that I made out the certificate of redemption upon the knowledge that the money therefor had been paid in the office, without handling the money myself. It is possible that I affixed the seal of the district court to the redemption certificate, while acting as deputy clerk; but, if so, I have forgotton it. *Q.* Is it not possible, Mr. Reamer, that, while acting as deputy clerk in the absence of Mr. Morse, you may have issued the redemption certificate, as above described, to which you signed the name of B. M. Morse as clerk, by yourself as deputy? *A.* If I ever did act as deputy clerk for Morse during his absence I may have issued a redemption certificate, and signed the name of B. M. Morse as clerk, by myself as deputy. It is possible that Morse may have requested or directed me to perform the duties of his office while he was absent, and that I have now forgotton it. If I should be shown a certificate of redemption of land for tax sale dated October 7, 1868, signed in my own hand, 'B. M. MORSE, Clerk,

by M. N. REAMER, Deputy,' it would be convincing proof to my mind that Morse had authorized me to act as his deputy, and that I was so acting at the time such certificate was issued. At that time Brown and Morse were much older than I, and I relied very largely upon their advice and direction in all matters pertaining to office work which I did in Sioux county. They were much older than I, and more experienced in the transaction of county business."

David Bonesfield gave testimony on this subject as follows : "Fifty years of age. Occupation, farmer. Residence, Settler's township, Sioux county. First came to Sioux county, May 29, 1868. Was acquainted in 1868 with B. M. Morse, M. N. Reamer, A. J. Brown and Andrew St. Clair and Adam Scott, at Calliope, Sioux county. There were no other residents in Sioux county at the time I came there. Morse was sometimes away from his office. Reamer did the work in his office when he was gone. I was frequently about the office up to November 1, 1868, and was familiar with Morse and Reamer. I remember that Morse was away about ten days in the fall. Cannot remember the exact time. It was some later than the election. Minor N. Reamer did Morse's work in the office when Morse was away, and was recognized by the people of Sioux county as Morse's deputy, and the person properly authorized to do Morse's official work when Morse was away."

A witness, Peter Romine, said: "Fifty years old. Residence, Calliope, Sioux county. Occupation, farmer. In the fall of 1868 I lived at Calliope, and was acquainted with B. M. Morse, M. N. Reamer and A. J. Brown. At that time B. M. Morse was acting as clerk of the district court, and A. J. Brown was county treasurer. M. N. Reamer was acting as recorder, and a member of the board of supervisors. *Question.* State whether or not the said B. M. Morse was away from Calliope and from Sioux county for some little time during the fall of 1868. *Answer.* He was away, and when he returned he said he had been at Fort Dodge, looking after some property that he had. During said

period he was frequently away from his office at Calliope.  *Q.*  State, if you know, who did the work of Morse's office at the times when Morse was away.  *A.* Reamer generally did his work.  *Q.*  State whether or not Reamer was generally looked upon in the county as Morse's deputy, and the person properly authorized to do Morse's official work when Morse was away.  *A.* Yes, sir.  He took charge of his books when he was gone. I did not know of Morse having any deputy, only that Reamer did his business when he was away.  At that time I was quite familiarly acquainted with all the county officers, and had full opportunity to know who did the work in the various offices.  I spent a good part of my time there."

R. H. Miller says:  "Age, fifty years ; farmer ; residence, Akron, Iowa.  In 1868 resided in Union county, Dakota.  Was well acquainted with Minor N. Reamer and Bartlett M. Morse.  Both lived at Calliope at that time.  Morse was county clerk.  I knew of Morse being away from Sioux county several times during the year '68, and for several days at a time.  It was customary for either Reamer or A. J. Brown to do the work of the office while Morse was away.  Could not say whether Reamer was deputy when Morse was away or not.  He seemed to act as Morse's deputy when Morse was away.  Could not say at the present time whether I have seen him doing Morse's work or not. Have frequently seen him in Morse's office, writing, and attending to general business.  It was generally understood that Reamer or Brown did the work when Morse was away."

The certificate bears the impress of the seal of the district court of Sioux county, the genuineness of which is not questioned.  Below the signature of Reamer is also the following notification and counter signature of A. J. Brown, the then county treasurer:

"Notified to and countersigned by the county treasurer of said county, this sixth day of October, A. D. 186-.

"A. J. BROWN, County Treasurer of Sioux county."

The certificate, and notification at the bottom, signed by Brown, are made by filling in printed forms for that purpose, and there seems to have been a failure to complete the year by adding the final figure, and hence the year stands as "186–." The date in other respects corresponds with the certificate, and the genuineness of Brown's signature is clearly established by the testimony. These facts in detail have no substantial dispute in the testimony, and the question is, are they sufficient to justify a finding that Reamer was, at least *de facto*, a deputy for Morse at the time the certificate was given? In 1 Greenleaf on Evidence, section 92, speaking of the written appointment of public officers, he says: "All who are proved to have acted as such are presumed to have been duly appointed to the office, until the contrary appears ; and it is not material how the question arises, whether in a civil or criminal case, or whether the officer is or is not a party to the record, unless, being plaintiff, he unnecessarily avers his title to the office, or the mode of his appointment, in which case, as has already been shown, the proof must support the entire allegation. In Phillips on Evidence, volume 1, *642, is this language : "It has been seen that it is a rule that all public officers, who are proved to have acted as such, are presumed to have been duly appointed to the office until the contrary is shown." Starkie on Evidence is equally forcible in support of the rule. Section 646. The above quotation from Greenleaf on Evidence is in the main cited with approval in the case of *Londegan v. Hammer*, 30 Iowa, 508. Viewing the facts of the case in the light of these authorities, we are convinced that Reamer was at the time of issuing the certificate a deputy of Morse, *de facto*, if not *de jure*. The absence of a written appointment from the files, then kept in the office of the county judge, is the only doubtful feature as to his having a regular appointment. Being of record only as a paper filed with others, and after so many years, its displacement or loss would not be strange, and, in view of the fact of his having acted as deputy, the loss might well be presumed.

Burke v. Cutler.

II.	It is urged that the proofs do not show that the money for the redemption was ever paid. The redemption certificate was obtained by one T. J. Stone, of Sioux City, who was Wheeler's agent, Wheeler residing in Vermont, and Stone having funds of Wheeler in his hands.  The amount paid for redemption, as shown by the certificate, is $20.04.  Under date of October 10, 1868, Stone writes to Wheeler from Sioux City a letter with these words : " * * * Herewith find enclosed certif. redemption for land in Sioux Co.  Amt. pd., $20.04.  Com. $1.46.  Total, $21.50." It thus appears that Wheeler received from his agent in Iowa the certificate with a letter charging him with the amount necessary for redemption; and, with the tax certificate acknowledging the receipt of the money, we think it very conclusive that the money was paid.  It is said that neither the register of tax sales kept by the clerk, in which he was required to make an entry showing the redemption, nor the records of the treasurer's office, show anything in reference to the redemption of this land.  If the money was actually paid, these facts would not operate to defeat the redemption.  It was in no sense the duty of the taxpayer to know that the officer to whom the money was paid made the proper entry of record, or properly placed the money.  In fact we do not understand the defendants to urge this point, further than as showing that the money was not actually paid for the redemption; but such facts are merely presumptive at best, and do not overcome the positive showing in favor of payment.  In *Corning Town Co. v. Davis*, 44 Iowa, 622, it is said that " the law authorizing redemption from tax sales is to be liberally construed in favor of the land-owner, whose estate will be divested by the sale;" and after the payment of the money for redemption it will not allow the misconduct or neglect of public officers to divest him of his property.  *Fenton v. Way*, 40 Iowa, 196.

2. TAX sale:
redemption:
evidence:
failure of
officers to
make entries.

III.	It is urged that the plaintiff's right of action is barred by the statute of limitations.  This position is

3. ——: void deed: adverse possession: statute of limitations.

certainly not tenable if the claim has reference to the statutory period of five years, as under the above findings the deed given after the redemption was void, and a void deed gave no right whatever to the purchaser under that provision of the statute. Code, sec. 902. The redemption avoided all prior proceedings as to the sale; and, the deed being void, the statute of limitations has no application. *Nichols v. McGlathery,* 43 Iowa, 189, The argument also proceeds upon the theory that the general statute of limitations is applicable, and the plaintiff's right of action is barred because of his laches. The land in question was unoccupied up to May, 1878, when the defendant Cutler took possession. The tax deed being void, the possession was presumptively in the holder of the legal or patent title prior thereto. *Patton v. Luther,* 47 Iowa, 236. This action was commenced—at least the petition was filed—May 4, 1885. Hence the ten years necessary to bar the action in consequence of adverse possession had not expired.

IV. Defendants, by an amendment to their answer, aver, and also claim in argument, that the plaintiff is

4. ——: ——: possession under and improvement in good faith: redemption: delay: equity.

equitably estopped to maintain the action, because of his long delay to assert his rights, or those of his grantor. It should be kept in mind that a mistake for which Wheeler was in no way responsible lay at the foundation of this difficulty. It does not appear from the record that he was as a rule negligent as to the payment of his taxes. The record shows that he promptly paid the taxes on the land after he entered the same in 1857, to and including the year 1874, except the year 1866, for which the sale was made, and the redemption was made in October thereafter. It was after he became aware that the title of the land was being questioned, because of this giving of the deed after his redemption, when he neglected to pay the taxes, being informed, as he says, that the time was past to make his title good. The record nowhere impresses us with a belief that, but for the wrongful act

of issuing the deed, and his being led to believe that by lapse of time during which he had paid the taxes on the land, he had lost his rights thereto, would there have been any default in the payment of taxes. If this be true, it is a doubtful rule of equity that would adjudge him at fault. On the tax receipt sent him for the year 1871 is a lead-pencil noting, as follows: " W. H. Gurley has tax deed;" and also across the face of the receipt, in pencil, are these words: " The treasurer writes Gurley has tax deed for 1866 tax. I think you have certif. of redemption for that year." It is urged that this was notice to him, and laches are charged on account of his taking no steps with regard to the deed. With his taxes all paid, did this notice create an equitable obligation on his part for the protection of the tax-sale purchaser ? Had he not a right to presume that the records were a correct exhibit of his doing as to redemption ? And had he not also a right to presume that the purchaser would take notice of such facts ? We think so, and we do not believe that the consequences of the failure of the officers to make the proper record or properly pay over the money should be visited on one so free from fault. Not differing from the authorities cited by defendants in support of the rule that equity will interfere to prevent the prosecution of stale demands, we think this is not a case within the rule. It is true, these defendants have taken these lands in good faith, and perhaps no reasonable disposition of this case can give them full reparation in all respects. But with a proper accounting for taxes paid by them, and for improvements to the land, equity will be more nearly obtained than to absolutely divest the plaintiff of the land without compensation. The decree of the district court is reversed, and the cause remanded for a decree in accordance with this opinion, and a proper accounting as to taxes and improvements to the land.

REVERSED.