## Antonia Hegar *et al vs.* John DeGroat.

Opinion filed July 6th, 1893.

### Parties Plaintiff.

Sections 3303, 4870, Comp. Laws, construed. The plaintiff Schmitz conveyed the land in question to the plaintiff Hegar while the defendant was in the actual possession of the land, claiming title adversely to Schmitz. *Held*, in an action brought by Hegar to recover the possession, and damages for wrongfully withholding the land, that Schmitz was properly joined as a formal party plaintiff.

### Evidence.

While Schmitz was living on the land, the sheriff, aided by the defendant, and assuming to act under and by virtue of a writ of execution issued out of a Justice's Court, entered upon the land, and ousted Schmitz, and put the defendant in possession. The execution was issued upon a judgment by default in an action for an unlawful detainer, in which the defendant herein was plaintiff, and Schmitz was defendant. The record in said action was excluded from the consideration of the jury upon the ground that the justice of the peace had no jurisdiction. The complaint showed upon its face that both parties to the action claimed title and based their right to possession upon a fee simple title. *Held*, that the ruling was not erroneous.

### Void Tax Deed—Instructions.

Plaintiff Schmitz was was the general owner of the land, and in possession. His title was perfect, unless the defendant had a superior title by virtue of a certain tax deed under which defendant claimed title. At the trial it appeared that the tax deed was void on its face, for certain substantial reasons. The District Court ruled out the tax deed, and instructed the jury to disregard the same, as it furnished no justification to the defendant for entering upon the land, and ousting Schmitz therefrom. *Held*, that the instruction was proper.

### Attorney's Fees Not Properly Recovered as Damages.

The action is to recover possession of the land, and for damages for its wrongful occupation. At the trial, against objection, plaintiffs were allowed to introduce testimony showing their expenditures for attorney's fees in prosecuting this action. The verdict was for the plaintiffs, and the jury allowed, as a separate item, the sum of $500 as and for plaintiff's attorneys' fees in this action. *Held*, that the court erred in admitting the testimony, and that the judgment must be modified by striking therefrom the amount allowed as attorneys' fees. *Held*, further that § 4601, which allows a recovery, as a part of the damages, of "the costs, if any, of recovering the possession," has reference only to the costs incurred in a previous action, if any had been brought for the sole purpose of recovering possession and that even in such cases expenditures incurred in the previous action could not embrace attorneys' fees as an element to swell the damages in the later action.

**Evidence Sustains Verdict.**

> Testimony as to the value of the use of the land in question is examined and considered. *Held*, that the verdict as to the value of the use is justified by such evidence.

**Interest on Damages.**

> The court instructed the jury that they might, at their option, allow or not allow interest on the annual value of the use of the land while it was wrongfully occupied by the defendant. *Held*, that such instruction was proper.

**Irrelevant Testimony—Harmless Error.**

> Against objection, one of plaintiffs' witnesses was allowed to testify as to certain matters which were foreign to the issues in the case. *Held*, that the testimony was improperly admitted, but that it was not prejudicial to the defendant, and hence a new trial will not be granted on account of such error.

**Void Tax Deed Will Not Start Statute of Limitations.**

> A tax deed, void on its face, cannot operate to set the statute of limitations in motion. Accordingly, *held*, (construing Comp. Laws, § 1640,) that this action is not barred on account of the fact that it was not commenced until more than three years had elapsed after the void tax deed was recorded.

Appeal from District Court, Traill County; *McConnell*, J.

Action by Antonia Hegar and Micke Schmitz against John DeGroat in ejectment and for damages for the use and occupation. Plaintiff recovered judgment for possession and $3745 damages and for costs, and defendant appeals.

Modified.

*Selby & Ingwaldson,* (*M. A. Hildreth* of Counsel) for appellant. *J. E. Robinson,* for respondent.

WALLIN J. This action is brought to recover the possession of a certain quarter section of land in Traill County, with damages for withholding the same, and for the costs of recovering possession. It is conceded that in the month of April, 1887, the plaintiff Schmitz, who then resided upon the land with his family, was the fee simple owner thereof, unless De Groat, the defendant, was such owner by virtue of a tax deed executed and delivered by the county treasurer of Traill, and upon which the defendant bases all his rights to the land. It appears that DeGroat, relying upon his tax title to recover possession, instituted an action in a

Justice's Court of Traill County against the plaintiff Schmitz to oust Smitz, and to recover possession of the land, under the unlawful detainer statute. Schmitz did not appear in such action, and De Groat obtained judgment in his favor, whereupon an execution issued, and the sheriff (claiming to act under such execution, and being actively assisted by the defendant) ousted Schmitz from the land, and placed the defendant in the exclusive possession thereof. Schmitz was dispossessed in the month of April, 1887, and the defendant continued in the exclusive possession of the land from that time for six cropping seasons, and was in possession when the trial took place in this action, in December, 1892. In May, 1892, the plaintiff Schmitz and his wife, by a deed of conveyance duly executed and recorded, conveyed all of their right, title, and interest in the land to the plaintiff Antoine Hegar, and also, by the same deed, transferred to Antoine Hegar "all the rights of said grantors to recover possession of said land, with damages for the withholding thereof, and the rents and profits of the same, and for waste committed therein." The grantors further empowered the grantee to institute any and all necessary actions, in their name or otherwise, to recover possession and damages, as before stated. The deed being made while the defendant was in the actual possession of the land, Schmitz name is properly used as a nominal plaintiff in this action, pursuant to the provisions of § 4870, Comp. Laws.

The trial court permitted the tax deed and the tax proceedings upon which the deed was based to be introduced in evidence, but in its charge to the jury they were instructed by the court, in substance, to wholly disregard the tax deed. We are satisfied that the tax was void, and that the deed was void on its face; but, as the soundness of this ruling of the District Court is practically conceded by appellant's counsel, we do not deem it necessary, in this case, to set forth in detail the grounds or reasons upon which we rest our conclusions upon this feature of the case.

The complaint charged that the plaintiff was lawfully seized and possessed of the land as owner in fee simple, and "that

while so possessed thereof, on April 2nd, 1887, the defendant entered upon said premises, and ousted said Schmitz, and that he still unlawfully withheld from the plaintiff possession thereof, * * * and that the value of the use and occupation of said premises since the 2nd day of April, 1887, * * * is $500 a year." Plaintiffs further claimed in their complaint general damages in the sum of $1,000, but do not set up in their complaint any demand for attorney's fees as a part of plaintiffs' costs in recovering the possession. The verdict was for the plaintiffs, and embraced the following: "For the use and occupation of the land, $3,245; for the cost of recovering the said land, $500,— amounting in all to the sum of $3,745." Plaintiffs' counsel was called as witness to show the amount of attorney's fee which plaintiffs would be obliged to pay out in this action as one part of the cost of recovering possession of the land. The witness testified, in substance, that at the lowest figure the attorney fee would be from $500 to $550. The testimony was objected to upon the ground that it was not the proper measure of damages, was incompetent, irrelevant, and immaterial, and no foundation laid for the proof. These objections were overruled by the court, and defendant excepted. These rulings are assigned as error in this court. We think these exceptions must be sustained. The prevailing general rule is that expenditures for attorneys' fees made by the successful party cannot be shown at the trial as an element of damages. This is true, especially where the statute, in terms, allows specific sums as taxable costs, and as indemnity to the suitor for his expenses, over and above disbursements. The statute of this state expressly allows such costs, as distinguished from the disbursements made by the prevailing party. Comp. Laws, § 5186. As to the general rule that money paid as attorneys' fees cannot be shown in evidence as an element of damages, see the following: *Day* v. *Woodworth*, 13 How. 372; *Fairbanks* v. *Witter*, 18 Wis. 287; *Barnard* v. *Poor*, 21 Mass. 278; *Seeman* v. *Feeney*, 19 Minn. 79, (Gil. 54;) *Jandt* v. *South*, 2 Dak. 46, 47 N. W. Rep. 779; *Otoe Co.* v. *Brown*, (Neb.) 20 N. W. Rep. 274.

Nor do we think that the section of the Code which prescribes the measure of damages for the "unlawful occupation" of real property (Comp. Laws § 4601) should be so construed as to change the general rule. Besides the value of the use of the land, the section authorizes the recovery of "the costs, if any, of recovering the possession." We think the term "costs," as used in the statute, was intended to have a limited and technical meaning. In general use, the term "costs," when employed with reference to litigation, embraces both disbursements and specific sums allowed by statute as indemnity to the prevailing party for his expenses. In a narrower sense, the term "costs" excludes disbursements. Giving the term its most liberal signification, it could embrace only the taxable costs and disbursements in an action. The statute regulating costs and disbursements in this state is later in date than that which regulates the measure of damages in cases like this, and if the two enactments were in conflict the former would have to give way, but in our opinion they are not in conflict. The statute allows certain sums as costs to the prevailing party in the cases enumerated in the statute. Section 5191 declares: "Costs shall be allowed of course to the plaintiff upon a recovery in the following cases: 1. In an action for the recovery of real property." The sums allowed by the statute are not discretionary with the court in this class of cases, and the plaintiff can therefore add such sums in taxing the costs to his items of disbursements. Reference to § 5186 shows that the allowances for costs were intended by the legislature to be by way of idemnity for expenditures, including expenditures for attorneys' fees made by the successful party. Section 4601 constituted one of the sections of the Civil Code which was reported for adoption by the commissioners of the State of New York, See Civil Code of New York reported by the "commissioners of the Code," p. 576. The section seems not to have been adopted in New York, but it was adopted by the Territory of Dakota, and since then it has been incorporated with the Civil Code of the State of California. So far as we know, this feature

relating to costs has never received judicial construction. Doubtless, the clause of the section which allows, as an element of the damages, the prevailing party to recover the "costs, if any, of recovering the possession," voices the better rule of law, as the law stood in the State of New York when the commissioners of the Code made their report to the legislature of that state. At that time it was allowable, and it may be done in this state; to first sue for the possession, and, if successful, the prevailing party could institute another action for damages for withholding, or for rents and profits, or waste. Comp. Laws, § 4932; Sedg. & W..Tr. Title Land, § 650 *et seq.* In a case where the party had been successful in a former action brought for the sole purpose of recovering the possession of the land, and the costs of such former action, for any reason, had not been recovered, the rule was that such costs, *i. e.* the taxable costs incurred in the action to recover possession, could be shown as a distinct element of damages in in the action for wrongful occupation. It is the rule which is voiced in the clause of § 4601, *supra*, which allows the recovery of "the costs, if any, of recovering the possession." In this case the evidence showing that plaintiffs had paid out a large sum as attorneys' fees for prosecuting this action was inadmissable. It did not come within the statutory rule, because there had never been any costs incurred in a former action to recover the possession. The attorney's fee paid in this action was paid for prosecuting a suit for damages, as well as for the recovery of the possession; and in this suit, as has been seen, the statute has, besides disbursements, made allowances by way of costs to reimburse plaintiff for his expenditures. To recover double costs would be oppressive. We go further, and say that, if there had been a former action for the recovery of the possession alone, attorneys' fees paid in the former action could not be included as an element of damages in this action. There is some conflict of authority, but the general rule, and we think the better rule, is that sums paid out or incurred for attorneys' fees should not, in this class of cases, be allowed to swell the damages. In *White* v. *Clack*, 2 Swan, 230,

the Supreme Court of Tennessee held that the costs of ejectment could be recovered, and that this meant "the legal and proper costs taxed in the action of ejectment, not including counsel fees or other expenses incurred by the plaintiff in the prosecution of the suit." The development of the doctrine we have been considering may be traced in the cases cited below. *Baron* v. *Abell*, 3 Johns. 481; *Aslin* v. *Parkin*, 2 Burrows, 665; *Delatouche* v. *Chubb*, 1 N. J. Law, 466; *Hunt* v. *O'Neill*, 44 N. J. Law, 566. Also, Sedg. & W. Tr. Title Land, § 679, and cases there cited. The result is that the special verdict for $500, as and for plaintiffs' attorneys' fees in this action cannot stand, and the evidence upon which it is predicated was improperly admitted, to defendant's prejudice.

The complaint charges that the value of the use of the land during the period of defendant's occupancy thereof was $500 a year. To support this averment, plaintiff's introduced several witnesses, and a majority of them testified that the use of the land was worth at least $500 a year, and two of plaintiffs' witnesses testified that the use was much more than $500 per annum. Two of plaintiffs' witnesses estimated the value of the use on the basis of a cash rental, and their estimate was from $2 to $2.25 an acre for each year. The testimony of defendant's witnesses was, in substance, that the value of the use was from $2 to $2.25 an acre each year. The question of the value of the use was a question of pure fact, and one falling strictly within the province of the jury to determine. We cannot say that the verdict is not supported by a preponderance of the evidence, and, even if the preponderance was in favor of a lower figure, that alone would not justify a court of review in setting aside the verdict. To do so would be, in effect, to substitute our judgment for that of the jury, which of course, cannot lawfully be done. It follows that the general verdict cannot be vacated on the ground of the insufficiency of the evidence. *Halley* v. *Folsom*, 1 N. D. 325, 48 N. W. Rep. 219.

The court instructed the jury, in effect, that they might or might not, at their discretion, allow interest at 7 per cent. as a part of the plaintiffs' damages. The instruction was excepted to

by the defendant, but we think the exception untenable. The action was for unliquidated damages, and in such cases the jury have discretion as to the allowance of interest. *Johnson* v. *Railroad Co.* 1 N. D. 355, 48 N. W. Rep. 227. In cases like this, the rule has long been established that interest may be allowed upon the annual value of the use. Sedg. & W. Tr. Title Land, § 670.

Issue was joined, by a special denial, upon the averment of the complaint that the defendant unlawfully entered upon the land, and unlawfully evicted the plaintiff therefrom. In support of such averment, the plaintiff Schmitz testified, in substance, that he was living on the land at the time the defendant came with the sheriff, and that the "defendant made him get off." That the sheriff said, " 'Get off, and stop there, or I will put the handcuffs on you, and put you in the Caledonia jail.' The reason I got off the land was because he threatened to put the shackles on me, and put me in jail." Defendant when testifying, denied, substantially, that any threats were used at the time referred to, and stated that Schmitz, on such demand being made by the sheriff, voluntarily agreed to go, and did surrender possession voluntarily, and in obedience to the writ of execution issued by the justice of the peace in the unlawful detainer action. We think all of the testimony on this point was competent. But the court below took this feature of the case from the jury, and instructed them, in effect, that defendant's entry upon and occupation of the premises were wholly unlawful. This instruction is assigned as error in this court. We think the instruction was not erroneous. The complaint in the unlawful detainer action, which, with the entire record in that action, was put in evidence, showed on its face that the justice could have no jurisdiction to try the action. The facts alleged in the complaint showed, in substance, that the defendant herein was the owner of the land by virtue of said tax title, and that, prior to the execution of the tax deed, Schmitz was the owner, and that since the defendant became the owner under the tax deed he had formally notified Schmitz to quit and vacate the land, but that Schmitz refused, and would not vacate.

These allegations showed conclusively that the controversy be-
tween the parties arose over a question of title to land, and con-
sequently that the justice could have no jurisdiction to try the
case. Hence the District Court instructed the jury, quite prop-
erly, that the proceedings in the justice's court gave the defendant
no right to evict Schmitz, nor could such proceedings furnish any
legal excuse for compelling Schmitz to vacate. It is entirely
proper to allow Schmitz, as a witness in his own behalf, to state
all the facts and circumstances surrounding his removal from the
land; and he was obliged, under the allegations of eviction set out
in the complaint, to prove the fact that he was forced to leave
the land. Defendant objected to plaintiff's evidence on this
feature of the case, and moved to strike it out. The court refused
to strike it out, and we think quite properly. While testifying as
to his removal from the land, Schmitz was asked this question:
"State what kind of a place you had to go to live in after you
were put off this land." He answered: "Well, I went over to
Lewis Wright's, and slept in the barn, in the hayloft, two miles
east, or two and a half, from where I lived. Q. How much of a
family have you? A. We had one. I had a wife and child
coming two years old. Q. You are of German decent? A.
Yes sir." "No, I cannot read English, so I cannot write." These
questions were all objected to as incompetent, irrelevant, and
immaterial. The objections were overruled, and the court refused
to strike out the testimony, and defendant took exception to the
several rulings. We think the evidence was foreign to the issue,
and was erroneously allowed to remain in the record; but, after a
very careful consideration of the entire record, we are convinced
that the error was a harmless one. The testimony referred to
certainly could not have operated to influence the jury to find a
verdict for defendant. That was out of the question. The trial
court, in plain terms, instructed the jury that defendant's pre-
tended title to the land was worthless, and that their verdict must
be for the plaintiffs. The court said: "I charge you as a matter
of law, that the plaintiff's are entitled to recover in this case, and

therefore I direct a verdict in favor of the plaintiffs; but what the amount of the verdict will be is left to you, as you may find they are damaged. So the only question that you have for your consideration is, what have the plaintiffs been damaged by the defendant withholding this land from them?" The single issue for the jury to pass upon related to the plaintiff's damages, and it is certain that the obnoxious testimony could not, in view of the judge's very careful charge on that feature of the case, have influenced the jury at all. The court laid down the measure of damages by reading the whole of section 4601; and the court also reiterated to the jury that the only element of damage was the value of the use of the land, with plaintiffs' attorneys' fees added, and expressly said to the jury: "You can allow nothing by way of punitive damages,—nothing by way of exemplary damages,— because, in this action, all the plaintiffs are entitled to is compensatory damages; nothing more or less than compensatory damages; what will compensate them for the injury sustained by the withholding of this land." The jury was properly and fully instructed as to the measure of damages, except as to attorneys' fees, and was especially cautioned against allowing anything by way of exemplary damages; and hence we are satisfied that the testimony, though improperly admitted, could not have been prejudicial to the defendant. The verdict, as it stands, has ample support in evidence which was entirely competent; nor is there, in our judgment, any good reason to suppose that another trial, if granted, would result in a verdict which would more nearly approximate to right and justice, or to a correct legal standard, than that already rendered, after excluding the attorney fee.

One other point remains to be considered. Defendant claims that the special statute of limitations requiring that actions brought to recover possession of lands sold for taxes shall be brought within three years after the recording of the tax deed applies to this action, citing Comp. Laws, § 1640. The action was not commenced until more than three years after the tax

deed was recorded. But we are clear that the statute cannot be invoked as a bar to an action to recover possession in a case where the defendant's only claim of title is a tax deed void on its face. The deed being void on its face, there was nothing for the statute to operate upon,—nothing to set it in motion. This view has the support of the weight of authority, and is, in our judgment, the safer doctrine. *Moore* v. *Brown*, 11 How. 414; *Waterson* v. *Devoe*, 18 Kan. 223; *Hall* v. *Dodge*, Id. 277. In Iowa, when the assessment is void, the statute will not run. *Nichols* v. *McGlathery*, 43 Iowa, 189; *Burke* v. *Cutler*, (Iowa,) 43 N. W. Rep. 204; *Towle* v. *Holt*, (Neb.) 15 N. W. Rep. 203; *Sheehy* v. *Hinds*, 27 Minn. 259, 6 N. W. Rep. 781; *Hurd* v. *Brisner*, (Wash.) 28 Pac. Rep. 371; *Bird* v. *Benlisa*, 142 U. S. 664. 12 Sup. Ct. Rep. 323.

It follows from what has been said that the judgment of the District Court is erroneous as the sum of $500 improperly inserted therein as plaintiffs' attorney fee. That sum must be stricken from the judgment, and this court will direct that the judgment be modified accordingly; defendant to recover costs in this court. All concur.