2007 ND 67

**WFND, LLC, Plaintiff, Appellant and Cross–Appellee**

v.

**FARGO MARC, LLC, Defendant, Appellee and Cross–Appellant.**

No. 20060125.

Supreme Court of North Dakota.

May 7, 2007.

Roger J. Minch (argued), Serkland Law Firm, Fargo, ND, for plaintiff, appellant and cross-appellee.

Mark R. Hanson (argued) and Kirsti B. Hourigan (on brief), Nilles, Ilvedson, Stroup, Plambeck & Selbo, Ltd., Fargo, ND, for defendant, appellee and cross-appellant.

KAPSNER, Justice.

[¶ 1] WFND, LLC, appealed and Fargo Marc, LLC, cross-appealed from a judgment awarding Fargo Marc $38,700.12 in their dispute over WFND's purchase of Westgate Commons Shopping Center in West Fargo. We affirm the judgment.

I

[¶ 2] IBT Group, LLC, began developing Westgate Commons in February 2001 and entered into a lease with Old Navy, Inc., before IBT transferred all of its interest in the shopping center to Fargo Marc. Westgate Commons was to be completed in phases, and by fall 2001, the first phase was nearly finished and the shopping center had five tenants.

[¶ 3] On November 19, 2002, Fargo Marc agreed to sell Westgate Commons for $12,700,000 to JMC Development, LLC, or its designee, which became WFND before the sale was closed. The real estate purchase agreement contemplated a closing date of January 15, 2003, and provided for a "Holdback Sum" of $1,350,000 pending completion of the second phase of construction and the renting of additional space to business tenants. The purchase agreement required that the seller provide the buyer with copies of the tenant leases and a current "Rent Roll," and required the tenants to deliver estoppel certificates to the buyer. The agreement further provided that "Buyer shall have the further right to inspect, and Seller agrees to make available, at reasonable hours, any and all books, records, tenant files, contracts or other documents and data of Seller pertaining to the ownership, insurance, operation or maintenance of the Property." The agreement allowed the buyer a 30-day "Inspection Period" and was accompanied by a rent roll representing the monthly rent being paid by Westgate Common tenants. The agreement also provided that the seller had the right to convey to Menard, Inc. ("Menards"), a water detention pond located on the shopping center property, and the money paid for the property by Menards would be shared equally between Fargo Marc and WFND.

[¶ 4] On January 6, 2003, Fargo Marc and JMC entered into a first amendment to the real estate purchase agreement which extended WFND's inspection period to January 9, 2003, increased the holdback sum to $1,500,000, and altered the terms

and conditions required for Fargo Marc to receive payment of the holdback sum. Fargo Marc provided WFND copies of the tenant leases and the tenants provided WFND estoppel certificates. The closing occurred on January 31, 2003. After the closing, WFND sold the detention pond to Menards for $117,240, but refused to split the net sale proceeds with Fargo Marc.

[¶ 5] Approximately seven months after Westgate Commons was sold to WFND, Old Navy discovered that it had been overpaying its rent at the shopping center. The February 16, 2001, lease between IBT and Old Navy required Old Navy to pay rent on about 22,000 square feet of space at $11.90 per square foot for an annual minimum rent of $261,800 payable in 12 monthly installments. On May 30, 2002, IBT had entered into a lease amendment with Old Navy reducing its rent from July 1, 2002, through August 31, 2006, to an annual minimum rent of $241,271.50 calculated at the rate of $10.90 per square foot. Old Navy had continued to pay rent at the rate of $11.90 per square foot until noticing the error. Old Navy then began paying the annual minimum rent at the reduced rate and decreased its monthly payments to account for its overpayment of rent since July 1, 2002.

[¶ 6] WFND subsequently brought this action against Fargo Marc alleging, among other things, breach of contract, misrepresentation, and fraud. The gist of WFND's complaint was that Fargo Marc failed to supply accurate information regarding the amount of rent to be paid by Old Navy, and that if WFND had known the correct amount of rent, it would not have paid as much for Westgate Commons. Fargo Marc counterclaimed, alleging that WFND breached an agreement to share in the proceeds of the detention pond sold by WFND to Menards. Before trial, WFND offered to limit its claim to breach of contract and Fargo Marc did not object, but

the district court chose to hear evidence on the tort issues as well.

[¶ 7] After a six-day bench trial, the district court ruled that Fargo Marc was liable to WFND for deceit, but not for breach of contract, on the Old Navy rent claim. However, the court found that WFND failed to exercise ordinary care during the inspection period and at other times it reviewed Westgate Commons documents before closing of the sale, because those documents revealed that Old Navy was paying an incorrect amount of rent. The court also found that Old Navy was negligent in failing to decrease its rent payments on July 1, 2002, as allowed under the lease amendment. The court applied the comparative fault statutes, N.D.C.C. §§ 32–03.2–01 and 32–03.2–02, and apportioned fault between the parties and Old Navy, finding WFND 15 percent at fault, Fargo Marc 70 percent at fault, and Old Navy 15 percent at fault. The court ruled that WFND was liable to Fargo Marc on its claim for one-half of the net proceeds from the sale of the detention pond property to Menards. The court further ruled that both WFND and Fargo Marc were prevailing parties for purposes of assessing costs and disbursements, and after the court offset the amounts owed to each party, including an award to WFND for "net costs," judgment was entered in favor of Fargo Marc for $38,700.12. These appeals followed.

II

[¶ 8] Fargo Marc argues the district court erred in failing to dismiss WFND's fraud or deceit claim after WFND offered to abandon the claim.

[¶ 9] During the pretrial conference, WFND informed the district court that it no longer wanted to present its fraud claim at trial, but would "pursue this cause of action on the basis of . . . just simple

**848**

breach of contract of a real estate agreement." Fargo Marc did not object. The court denied WFND's request and heard evidence on the tort claims.

[¶ 10] Fargo Marc analyzes WFND's pretrial offer to limit its claims for relief as either a motion to amend the pleadings under N.D.R.Civ.P. 15, or a motion for voluntary dismissal of an action under N.D.R.Civ.P. 41. Under N.D.R.Civ.P. 15(a), at the pretrial conference stage of the proceedings, "a party's pleading may be amended only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Under N.D.R.Civ.P. 41(a)(2), at this stage of the proceedings, absent the filing of a stipulation of dismissal signed by all parties who have appeared in the action, "an action may not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court considers proper." A motion to amend a complaint under N.D.R.Civ.P. 15(a) and a motion for voluntary dismissal under N.D.R.Civ.P. 41(a)(2) lie within the sound discretion of the district court and will not be reversed on appeal absent an abuse of discretion. *Brandt v. Somerville,* 2005 ND 35, ¶ 27, 692 N.W.2d 144; *Commonwealth Land Title Ins. Co. v. Pugh,* 555 N.W.2d 576, 578 (N.D.1996); *see also* 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil 2d* § 1484 (1990); 9 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure: Civil 2d* § 2364 (1995). A court abuses its discretion if it acts in an arbitrary, unreasonable, or unconscionable manner, its decision is not the product of a rational mental process leading to a reasoned determination, or it misinterprets or misapplies the law. *City of Bismarck v. Mariner Constr., Inc.,* 2006 ND 108, ¶ 8, 714 N.W.2d 484.

[¶ 11] We do not view Fargo Marc's failure to object to WFND's request to dismiss the tort claims as tantamount to a stipulation for dismissal, even if no formal stipulation signed by the parties was required. *See, e.g., Eitel v. McCool,* 782 F.2d 1470, 1473 (9th Cir.1986) (unqualified oral stipulation of dismissal in open court satisfies F.R. Civ. P. 41(a)(1)(ii)); *Oswalt v. Scripto, Inc.,* 616 F.2d 191, 195 (5th Cir.1980) (same). Fargo Marc conditioned its acceptance of WFND's proposal on WFND not being allowed to rely on representations that were not specifically identified in the purchase agreement to support the breach of contract claim. WFND disputed Fargo Marc's position. While it may have been unusual for the district court to pass up an opportunity to narrow the issues in the parties' controversy, we cannot say the court abused its discretion in refusing to dismiss WFND's tort claims.

### III

[¶ 12] WFND argues the district court erred in finding that Fargo Marc did not breach the parties' purchase agreement.

[¶ 13] A breach of contract is the nonperformance of a contractual duty when it is due. *See* Restatement (Second) of Contracts § 235(2) (1981); *see also* NDJI Civil C–50.50 (1995). The elements of a prima facie case for breach of contract are: (1) the existence of a contract; (2) breach of the contract; and (3) damages which flow from the breach. *United States v. Basin Elec. Power Coop.,* 248 F.3d 781, 810 (8th Cir.2001) (applying North Dakota law); *see also* N.D.C.C. ch. 9–01; N.D.C.C. § 32–03–09; *Kuhn v. Marquart,* 45 N.D. 482, 487, 178 N.W. 428, 429 (1920). The burden of proving the elements of a breach of contract is on the party asserting the breach. *See Slaaten v. Amerada Hess Corp.,* 459 N.W.2d 765, 769 (N.D.1990); *Stewart Equip. Co. v. Hilling*

*Constr. Co.,* 175 N.W.2d 692, 696 (N.D. 1970); *Campbell v. Wishek Pub. Sch. Dist.,* 150 N.W.2d 840, 843 (N.D.1967). Although the interpretation of a contract is a question of law, *Ag Acceptance Corp. v. Glinz,* 2004 ND 154, ¶ 12, 684 N.W.2d 632, whether a party has breached a contract is a finding of fact that will not be reversed on appeal unless it is clearly erroneous. *Pfeifle v. Tanabe,* 2000 ND 219, ¶ 7, 620 N.W.2d 167. A finding of fact is clearly erroneous under N.D.R.Civ.P. 52(a) if it is not supported by any evidence, if, although there is some evidence to support the finding, a reviewing court is left with a definite and firm conviction a mistake has been made, or if the finding is induced by an erroneous conception of the law. *Pfeifle,* at ¶ 7.

[¶ 14] The real estate purchase agreement provided in relevant part:

> *4.2 Leases.* If not previously provided to Buyer, not later than five (5) days following the Opening Date, Seller shall deliver to Buyer true, accurate and complete copies of each of the Leases.

> . . . .

> 7. *Representations and Warranties.*

> 7.1 Seller hereby makes the following representations and warranties:

> . . . .

> (b) *Leases.* The copies of the Leases furnished (or to be furnished) to Buyer are true, correct and complete. . . . The Leases are the only leases presently affecting the Property and, without the prior written consent of Buyer first had and obtained, as of the close of escrow will remain the only leases affecting the Property, and no other party has or will have any rights of occupancy or possession in or to the Property as of the Closing, except as may be set forth in the instruments described in the Title Commitment. The Leases contain the entire agreement between Seller and each tenant with respect to its Lease of and rights in and to the Property, and there are no agreements between Seller and any of the tenants pertaining to the Property or any tenant's interest therein which are not set forth in the Leases. The Leases are in full force and effect and, to the best of Seller's knowledge, subject to no offsets for the benefit of any tenant except as set forth in the Leases.

> . . . .

> (e) . . .

> All of the representations and warranties of Seller contained in this Section 7.1 shall be true and correct as of the date hereof and as of the Closing Date, and shall survive the Closing hereunder for a period of one (1) year. Seller shall promptly notify Buyer of any change of which Seller becomes aware of the condition of the Property or of any event or circumstance of which Seller becomes aware which would make any representation or warranty of Seller untrue or misleading in any respect if made at that time. In the event of any change in condition of the Property or of any event or circumstance which would make any representation or warranty of Seller contained in this Section 7.1 untrue or misleading in any respect if made on the Closing Date, then notwithstanding anything to the contrary contained in this Agreement, Buyer may terminate this Agreement by written notice to Seller, in which event, the earnest money shall be returned to Buyer and the parties shall have no further obligation or liability to one another hereunder. The foregoing notwithstanding, if Buyer shall close title hereunder with actual knowledge of an inaccurate representation or warranty Buyer shall be deemed to have waived any claim for breach or damages with respect to such warranty or representation.

. . . .

8.1 On or before the Closing Date, Seller shall execute, acknowledge (as appropriate) and deliver, or cause to be executed, acknowledged (as appropriate) and delivered, to Escrow Agent, the following:

. . . .

(h) A current (as of the time of Closing) Rent Roll, certified by Seller as true and accurate.

. . . .

9.1 The purchase and sale of the Property and the closing of the transaction contemplated hereby is conditioned upon and subject to the following additional conditions in favor of Buyer:

. . . .

(c) Delivery by each of the Tenants of an estoppel certificate and a subordination non-disturbance and attornment agreement in form satisfactory to Buyer's lender or in form required by an existing Lease, if such Lease shall so required [sic] a specific form.

[¶ 15] The district court found that Fargo Marc did not breach any of the terms and conditions imposed by the real estate purchase agreement:

a. Fargo Marc attached a rent roll as required under page 2 of the Purchase Agreement as required under the specific language of the Purchase Agreement.

b. Fargo Marc provided true, accurate and complete copies of Old Navy leases as required under paragraph 4.2 of the Purchase Agreement.

c. The copies of the Old Navy lease documents were true, correct and complete as required by paragraph 7.1(b).

d. The Old Navy lease was in full force and effect and to the best of Fargo Marc's knowledge was not subject to any offset for the benefit of Old Navy except as set forth in the Lease and, therefore, paragraph 7.1(b) was not breached.

e. All of the representations and warranties by Fargo Marc contained in section 7.1 of the Purchase Agreement were true and correct as of the date of the Purchase Agreement and of the date of closing.

f. Fargo Marc did not fail to promptly notify WFND of any event or circumstance of which Fargo Marc became aware of which would make any representation or warranty of Fargo Marc contained in Section 7.1 untrue or misleading in any respect if made on the Closing Date.

g. Fargo Marc did provide, at the time of closing, a certified rent roll, prepared by Fargo Marc's attorney as required under Section 8.1(h) of the Purchase Agreement. The certified rent roll required under Section 8.1(h) is not a representation or warranty identified under 7.1 and, therefore, any failure for the rent roll to correctly identify the rent to be paid by Old Navy was not a breach of the Purchase Agreement, but could constitute "deceit" under North Dakota law.

h. Each of the Tenants provided WFND and/or WFND's banker an Estoppel Certificate in form satisfactory to Buyer's lender or in a form required by an existing Lease as required under Section 9.1(c) of the Lease.

[¶ 16] WFND does not point to a specific provision of the purchase agreement that Fargo Marc has breached resulting in error by the district court in failing to find such breach. Instead WFND argues the court erred by using a "straight-jacketed 'line by line' approach to contract breach" which is "far too narrow, ignores implied terms, object, frustration of purpose and the duty of contracting parties to deal with each other fairly and openly." WFND contends the purchase agreement "had one

overriding purpose, the complete and accurate disclosure of the rent the tenants were actually obligated to pay under their leases," and "Fargo Marc breached this fundamental purpose and object of the contract, by its deceit." We reject WFND's argument for several reasons.

[¶ 17] First, not only did WFND fail to plead breach of an implied covenant of good faith and fair dealing, but "[i]n North Dakota the doctrine of an implied covenant of good faith and fair dealing has only been applied to insurance contracts." *Dalan v. Paracelsus Healthcare Corp.*, 2002 ND 46, ¶ 11, 640 N.W.2d 726. Moreover, the implied covenant of good faith and fair dealing does not provide WFND any solace because it does not operate to alter the material terms of a contract. " 'The duty to act in good faith "does not obligate a party to accept a material change in the terms of the contract or to assume obligations that vary or contradict the contract's express provisions," nor does the duty of good faith "inject substantive terms into the parties' contract." ' " *Id.* at ¶ 13 (quoting *Barnes v. St. Joseph's Hospital*, 1999 ND 204, ¶ 14, 601 N.W.2d 587); *see also Basin Elec. Power Coop.*, 248 F.3d at 796 ("Courts must be careful when considering good faith, however, as it does not imply 'an everflowing cornucopia of wished-for legal duties.' ") (internal citation omitted). WFND cannot rely on the doctrine of good faith and fair dealing to supplement the terms of the purchase agreement.

[¶ 18] Second, WFND's reliance on frustration of purpose is misplaced. Generally, frustration of purpose is a defense to a breach of contract claim and constitutes an avoidance of all or part of a plaintiff's contract claim. *See* 30 R. Lord, *Williston on Contracts* §§ 77:6 and 77:95 (4th ed.2004). WFND has neither pled frustration of purpose nor sought to rescind or otherwise avoid the purchase agreement. Additionally, frustration of purpose "occurs when 'after a contract is made, a party's principal purpose is substantially frustrated without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made.' " *Tallackson Potato Co., Inc. v. MTK Potato Co.*, 278 N.W.2d 417, 424 n. 6 (N.D.1979) (quoting Restatement (Second) of Contracts § 285 (Tent. Draft No. 9) (1974)); *see also* Restatement (Second) of Contracts § 265 (1981) (adopted version). Old Navy's lowered rent obligation was negotiated and completed before the parties entered into the purchase agreement, and, as the district court found, WFND was partially at fault for its misunderstanding of that rent obligation. Frustration of purpose does not apply in this case.

[¶ 19] Third, the principal case relied upon by WFND, *Linden Partners v. Wilshire Linden Assocs.*, 62 Cal.App.4th 508, 73 Cal.Rptr.2d 708 (1998), does not support its argument that Fargo Marc breached the purchase agreement. In *Linden*, at 710, the plaintiffs purchased a medical office building from the defendants. The tenants had a lease with and paid rent directly to the defendants. *Id.* However, there was one subtenant who paid its rent directly to its sublessor. *Id.* The purchase agreement required the defendants to deliver to the plaintiffs the rent roll listing all tenants and the amount of rent being paid, and also required the defendants to furnish the plaintiffs with estoppel certificates signed by each tenant attesting to the length of the lease terms and amount of rent being paid. *Id.* at 710–11. The sublessor and the subtenant refused to sign estoppel certificates attesting to the amount of the subtenant's rent. *Id.* at 711. The plaintiffs asked the defendants how to calculate the subtenant's rent, and one of the defendants described how to make the calculation, which resulted in an amount of

$9,327.61. *Id.* The defendants later completed an estoppel certificate for the subtenant showing a monthly rental of $9,327.61. *Id.* When the plaintiffs received a rent check from the subtenant after closing, the check was for $6,177.60. *Id.* The plaintiffs then sued the defendants alleging breach of contract and intentional and negligent misrepresentation. *Id.* A jury found that the defendants had not committed fraud, but that they had breached their contract with the plaintiffs. *Id.*

[¶ 20] In affirming the jury verdict, the court in *Linden,* 73 Cal.Rptr.2d at 717 (emphasis added), summarized the critical portion of the parties' agreement:

Section 8(d) of the agreement provides that defendants have delivered (or inferentially that they will promptly deliver) to plaintiffs true, accurate and complete copies of all leases and other contracts and related documents, and that in all such documents *there shall be no "untrue statement of material fact or (failure) to state any fact which would be necessary, in light of the circumstances, to render the documents supplied not misleading."*

The court concluded the evidence supported the jury's verdict on breach, reliance, and causation because the defendants provided an incorrect rental formula in response to "a pointed inquiry" about the rent amount from the subtenant and the defendants provided an estoppel certificate on behalf of the subtenant containing the incorrect rental amount. *Id.* at 718–19. In this case, Fargo Marc did not advise WFND of an incorrect rental amount to be paid by Old Navy in response to a specific inquiry and Old Navy, rather than Fargo Marc, provided WFND its estoppel certificate stating the amount of rent it paid. Furthermore, the terms of the contract at issue in this case differ substantially from the terms of the contract in *Linden,* which specifically required

that the seller was representing that there would be no untrue statement of material fact which would render the supplied documents misleading.

[¶ 21] WFND also suggests *Linden* stands for the proposition that it had no duty to investigate and attempt to reveal the true status of Old Navy's rent obligation. The court in *Linden,* 73 Cal. Rptr.2d at 720–21, stated that "one to whom a representation is made has no duty to employ means of knowledge which are open to that party and which could, if pursued, reveal the falsity of that representation." But the court pointed out that "[t]his principle, holding as it does the potential for harsh results, must be applied carefully to the facts of each case," and "[e]very case must be judged for itself, and the circumstances which warrant or forbid relief cannot be scheduled." *Id.* at 721 (internal quotation marks omitted). A California court has rejected a similar argument that *Linden* holds "a buyer of real property may rely on facts represented by the seller, without making an independent investigation of their accuracy," because "[w]hether reliance is reasonable is always [a] question of fact." *H & M Props., LLC v. Triton 88, LLC,* 2004 WL 2406955 *6 (Cal.App.4th Dist., Oct. 28, 2004). *See also Hagert v. Hatton Commodities, Inc.,* 350 N.W.2d 591, 595 (N.D.1984) (reliance is a question of fact). *Linden* does not support WFND's argument that independent investigation is never required.

[¶ 22] WFND's argument that the purchase agreement in this case was breached by Fargo Marc's "deceit" attempts to make fraud or deceit a breach of contract in itself. Mixing principles of tort and contract law and using tort terminology to describe a breach of contract has been discouraged by this Court. *See Dakota Grain Co., Inc. v. Ehrmantrout,* 502 N.W.2d 234, 236 (N.D.1993). WFND has

provided no persuasive reasons for us to infuse tort principles in analyzing a breach of contract case.

[¶ 23] We conclude the district court's finding that Fargo Marc did not breach the purchase agreement is not clearly erroneous.

## IV

[¶ 24] Fargo Marc argues the district court erred in finding that it committed "deceit."

[¶ 25] The court found that "Fargo Marc committed the tort of deceit, as promulgated at NDCC section 9–10–02." The court should have used the term "fraud," which applies when there is a contract between the parties, rather than the term "deceit," which applies when there is no contract between the parties. *See, e.g., Grandbois and Grandbois, Inc. v. City of Watford City*, 2004 ND 162, ¶ 19, 685 N.W.2d 129. But the concepts are similar, and the distinction is not relevant for purposes of this case. *See id.*

Under North Dakota law, "[f]raud and deceit require misrepresentation of facts, suppression of facts, misleading another, or promising without intending to perform." *Schneider v. Schaaf*, 1999 ND 235, ¶ 16, 603 N.W.2d 869; N.D.C.C. §§ 9–03–08 and 9–10–02. "[P]roof of actual damage proximately caused by the misrepresentation or nondisclosure is an essential element of a tort action for fraud and deceit." *Schneider*, 1999 ND 235, ¶ 16, 603 N.W.2d 869.

*Id.* at ¶ 20. Fraud and deceit must be proved by clear and convincing evidence. *Wagner v. Wagner*, 2000 ND 132, ¶ 12, 612 N.W.2d 555. Fraud and deceit are questions of fact which will not be set aside on appeal unless clearly erroneous. *Sargent County Bank v. Wentworth*, 500 N.W.2d 862, 874 (N.D.1993).

[¶ 26] The court found that "Fargo Marc's representatives should have

known as of the date of closing, that the Old Navy rent had been reduced by $1 per sq. ft. beginning on July 1, 2002." Although Fargo Marc contends there is no evidence that it intentionally misrepresented to WFND that Old Navy had been paying more rent than it was legally obligated to pay, an intent to defraud usually is not susceptible of direct proof, and can be established by circumstantial evidence. *Miller Enters., Inc. v. Dog N' Cat Pet Centers of America, Inc.*, 447 N.W.2d 639, 644–45 (N.D.1989). It is reasonable to assume that Fargo Marc was well aware that Old Navy's rental obligation had been lowered when it acquired IBT's interests in the shopping center, and that Fargo Marc neglected to apprise Old Navy of its overpayment of rent and WFND of the overpayment because the error was in its favor. The additional rental income reflected on the rent roll increased the value of Westgate Commons. Although Fargo Marc complied with its contractual duties under the purchase agreement by providing WFND all the relevant documents, its act of withholding knowledge of Old Navy's actual rent obligation inured to its benefit. We conclude the district court's finding that Fargo Marc committed fraud is not clearly erroneous.

## V

[¶ 27] WFND argues the district court erred in calculating damages for fraud and deceit because it applied an incorrect capitalization rate in the computation.

[¶ 28] The amount of damages to which a party is entitled is a question of fact, and this Court will not reverse the district court's finding on damages unless that finding is clearly erroneous. *Landers v. Biwer*, 2006 ND 109, ¶ 13, 714 N.W.2d 476. We will sustain an award of damages if it is within the range of the

evidence presented to the trier of fact. *City of Grand Forks v. Hendon/DDRC/BP, LLC,* 2006 ND 116, ¶ 8, 715 N.W.2d 145.

[¶ 29] The district court calculated the amount of damages suffered by WFND caused by the reduced Old Navy rent of $22,135 per year by dividing that sum by a capitalization rate of 9.08 percent, resulting in damages of $243,777.53. WFND's expert witness testified the appropriate capitalization rate for the Old Navy rent reduction should be 8 percent, resulting in damages of $276,687.

[¶ 30] A district court is not required to accept the undisputed testimony of an expert witness. *Nord v. Herrman,* 1998 ND 91, ¶ 23, 577 N.W.2d 782. WFND's expert's testimony advocating application of an 8 percent capitalization rate was premised on the assumption that Old Navy was the shopping center's anchor tenant, but there is evidence in the record that Old Navy was not the anchor tenant. The 9.08 percent capitalization rate is the rate that applied to WFND's purchase of Westgate Commons and the amended purchase agreement specifically provided for a capitalization rate of 9.08 percent for future leases.

[¶ 31] We conclude the district court's use of the 9.08 percent capitalization rate is within the range of the evidence presented and is not clearly erroneous.

## VI

[¶ 32] WFND argues the district court erred in applying the comparative fault statutes in this "breach of contract/commercial case."

[¶ 33] The district court did not erroneously apply the comparative fault statutes to a breach of contract case. The court found Fargo Marc did not breach the purchase agreement, but committed fraud. For purposes of applying the comparative fault statutes, fault is defined in N.D.C.C. § 32–03.2–01 as including "acts or omissions ... that subject a person to tort liability." Fraud is a tort action. *See Grandbois,* 2004 ND 162, ¶ 20, 685 N.W.2d 129. We conclude the court did not err in apportioning fault in this case.

## VII

[¶ 34] WFND argues the district court erred in awarding Fargo Marc one-half of the net proceeds of the sale of the detention pond property to Menards.

[¶ 35] The purchase agreement provided in relevant part:

> 19.15 Subject to Buyer's prior written approval first had and obtained, Seller shall have the right, prior to the Closing, to convey a portion of the Real Property to Menards, the adjoining property owner, which portion shall be the existing storm water detention pond portion of the Real Property.... Any consideration payable by Menards for such conveyance shall be shared equally between Buyer and Seller.

[¶ 36] The district court found that after the purchase agreement was signed, Fargo Marc negotiated with Menards over the sale of the water detention pond and WFND "was kept abreast of those negotiations and participated in them." A draft purchase and sale agreement was prepared in November 2002, and attorneys for Fargo Marc and WFND reviewed it as well as a revised draft. On January 8, 2003, Fargo Marc's manager signed a purchase and sale agreement for the water detention pond which had already been signed by a Menards vice president, but he did not send the agreement to Menards. Fargo Marc's attorney contacted WFND's attorney and told him the purchase price was lower than reflected in previous drafts of the agreement. Before the sale of Westgate Commons was closed, WFND informed Fargo Marc's attorney that

WFND would attempt to negotiate a higher purchase price from Menards for the water detention pond. After the closing, on August 12, 2003, WFND sold the water detention pond to Menards for $117,240, resulting in net proceeds of $114,749.83.

[¶ 37] The court concluded the "plain and unambiguous" meaning of paragraph 19.15 of the purchase agreement was that Fargo Marc would be entitled to one-half of the sale proceeds of the water detention pond "whether the sale occurred before or after the closing of WFND's purchase" of Westgate Commons. The court further ruled:

Even if the Court were to conclude that the language in ¶ 19.15 is ambiguous and, therefore, the parties intent cannot be determined from the writing alone, the Court concludes that the extrinsic evidence offered at trial, including the testimony of [Fargo Marc's attorney], shows that the intent of the parties was that Fargo Marc would receive½ of the proceeds from the sale of the land to Menards even if the sale occurred after the closing of the sale of the shopping center to WFND. Moreover, after the Purchase and Sale Agreement was signed by Fargo Marc on, or about, January 8, 2003 [Trial Ex. 34], WFND advised Fargo Marc's attorney that WFND was going to try to negotiate with Menard, Inc., for a higher sale price. Parol evidence was admissible to show that the parties had a new agreement subsequent to the November 19, 2002, Purchase Agreement with regard to splitting the proceeds from the sale of the water detention pond to Menard, Inc. See N.D.C.C. § 9–07–07.

We need not decide whether the district court correctly interpreted paragraph 19.15 of the purchase agreement, because the court's finding that the parties entered into a new agreement to split the proceeds

of the sale of the property is supported by the evidence.

[¶ 38] A written contract may be modified by an executed oral agreement. N.D.C.C. § 9–09–06; *Mitchell v. Barnes*, 354 N.W.2d 680, 682 (N.D.1984); *see also* N.D.C.C. § 9–06–02 ("All contracts may be oral except such as are specially required by statute to be in writing"). The existence of an oral contract and the extent of its terms are questions of fact subject to the clearly erroneous standard of review under N.D.R.Civ.P. 52(a). *Edward H. Schwartz Constr., Inc. v. Driessen*, 2006 ND 15, ¶ 6, 709 N.W.2d 733. A contract requires parties capable of contracting, consent of the parties, a lawful object, and sufficient consideration. N.D.C.C. § 9–01–02; *Stout v. Fisher Indus., Inc.*, 1999 ND 218, ¶ 11, 603 N.W.2d 52. There is evidence in the record that Fargo Marc could have sold the property before the closing, but WFND wanted to attempt to obtain a higher price for the property after the closing, and Fargo Marc's attorney at the time testified it was the intent of the parties to continue to split the sale proceeds. We conclude the district court's finding is not clearly erroneous.

[¶ 39] WFND's arguments that the oral agreement violates the parol evidence rule under N.D.C.C. § 9–06–07, violates the statute of frauds under N.D.C.C. § 9–06–04(3), and fails for lack of consideration are unpersuasive. The parol evidence rule under N.D.C.C. § 9–06–07 does not preclude proof of the existence of a separate oral stipulation or agreement concerning any matter on which the written contract is silent, and which is not inconsistent with its terms, if the court infers from the circumstances that the parties did not intend the document to be a complete and final statement of the entire transaction. *See Delzer v. United Bank,*

459 N.W.2d 752, 755 (N.D.1990). Even if the court incorrectly interpreted paragraph 19.15 of the purchase agreement, that provision does not address the sale of property after closing and the oral agreement is, therefore, not inconsistent with its terms. The statute of frauds under N.D.C.C. § 9–06–04(3) requires contracts "for the sale, of real property, or of an interest therein," to be in writing. The parties' oral agreement was not a contract for the sale of real property or of an interest in real property, but was a contract to share in the proceeds of the sale. Good consideration to support a contract may consist of a benefit to the promisor or a detriment to the promisee. *Johnson v. Johnson*, 2000 ND 170, ¶ 37, 617 N.W.2d 97; N.D.C.C. § 9–05–01. By allowing WFND to negotiate a sale of the property for a higher amount after the closing, Fargo Marc gave up a guaranteed share of the proceeds under the terms of the purchase agreement when it declined to sell the property before the closing. We conclude this was sufficient consideration to support the oral contract.

[¶ 40] We conclude the district court did not err in awarding Fargo Marc one-half of the net proceeds from the sale of the detention pond property to Menards.

### VIII

[¶ 41] WFND argues it should have been awarded prejudgment interest and attorney fees under North Dakota law and the provisions of the purchase agreement. The district court implicitly denied the requests.

[¶ 42] Section 32–03–05, N.D.C.C., governs prejudgment interest in tort cases and provides that "[i]n an action for the breach of an obligation not arising from contract and in every case of oppression, fraud, or malice, interest may be given in the discretion of the court or jury." Under the statute, the trier of fact, whether court or jury, has broad discretion in determining whether to award prejudgment interest. *Gonzalez v. Tounjian*, 2003 ND 121, ¶ 37, 665 N.W.2d 705. We conclude the court did not abuse its discretion in refusing to award either party prejudgment interest on their competing claims.

[¶ 43] Successful litigants are not allowed to recover attorney fees unless authorized by statute or by contract. *Deacon's Dev., LLP v. Lamb*, 2006 ND 172, ¶ 11, 719 N.W.2d 379. WFND does not rely on statutory authority for an award of attorney fees, but relies on a provision of the purchase agreement which states:

Notwithstanding any other limitation on rights or remedies of the parties contained in this Agreement, in the event either party hereto shall employ legal counsel or bring an action at law or other proceeding against the other party to enforce any of the terms, covenants or conditions hereof, the party substantially prevailing in any such action or other proceeding shall be paid all reasonable attorneys' fees and costs, expert witness fees and costs, and other expenses related to such dispute incurred by the non-prevailing party ("Legal Fees"). In the event any judgement [sic] is secured by such substantially prevailing party, all such Legal Fees shall be included in such judgment.

[¶ 44] Assuming this provision of the purchase agreement applies after WFND was unsuccessful in its breach of contract action against Fargo Marc, it authorizes an award of attorney fees only to a "substantially prevailing" party. WFND prevailed on its Old Navy rent claim and Fargo Marc prevailed on its counterclaim for one-half of the proceeds from the sale of the detention pond property. Because neither party "substantially prevail[ed]," we con-

clude the district court did not err in denying WFND's request for attorney fees.

## IX

[¶ 45] Fargo Marc argues no costs or disbursements should have been awarded by the district court.

[¶ 46] Section 28-26-06, N.D.C.C., provides for the taxation of disbursements:

In all actions and special proceedings, the clerk of district court shall tax as a part of the judgment in favor of the prevailing party the following necessary disbursements:

1. The legal fees of witnesses; sheriffs; clerks of district court; the clerk of the supreme court, if ordered by the supreme court; process servers; and of referees and other officers;

2. The necessary expenses of taking depositions and of procuring evidence necessarily used or obtained for use on the trial;

3. The legal fees for publication, when publication is made pursuant to law;

4. The legal fees of the court reporter for a transcript of the testimony when such transcript is used on motion for a new trial or in preparing a statement of the case; and

5. The fees of expert witnesses. The fees must be reasonable fees as determined by the court, plus actual expenses. The following are nevertheless in the sole discretion of the trial court:

a. The number of expert witnesses who are allowed fees or expenses;

b. The amount of fees to be paid such allowed expert witnesses, including an amount for time expended in preparation for trial; and

c. The amount of costs for actual expenses to be paid the allowed expert witnesses.

[¶ 47] Section 28-26-10, N.D.C.C., provides for the discretionary allowance of costs:

In actions other than those specified in sections 28-26-07, 28-26-08, and 28-26-09, costs may be allowed for or against either party in the discretion of the court. In all actions, when there are several defendants not united in interest and making separate defenses by separate answers and the plaintiff fails to recover judgment against all, the court may award costs to such of the defendants as have judgment in their favor.

An award of costs under N.D.C.C. § 28-26-10 is discretionary, and a district court's decision on an award of disbursements under N.D.C.C. § 28-26-06 will be overturned on appeal only if an abuse of discretion is shown. *Heng v. Rotech Med. Corp.*, 2006 ND 176, ¶ 33, 720 N.W.2d 54.

[¶ 48] The district court ruled that "[b]oth parties are prevailing parties for purposes of taxation of costs under North Dakota law." Fargo Marc submitted a verified statement of costs and disbursements totaling $17,942.18. This sum included statutory fees under N.D.C.C. § 28-26-02(2), (3), and (5), disbursements listed under N.D.C.C. § 28-26-06, and photocopy charges listed as "discretion[ary]" costs under N.D.C.C. § 28-26-10. WFND submitted a verified statement of costs and disbursements totaling $37,558.60. This sum also included statutory fees under N.D.C.C. § 28-26-02(2), (3), and (5), disbursements listed under N.D.C.C. § 28-26-06, and photocopy charges and transcription preparation fees listed as "[d]iscretion[ary]" costs under N.D.C.C. § 28-26-10. The district court made some adjustments to the disbursements and costs claimed by the parties, with the net result being "taxable costs to WFND in the amount of $13,307.00." The court reduced Fargo Marc's award by this

amount, and after adding statutory interest, judgment was entered in favor of Fargo Marc for $38,700.12.

[¶ 49] Determining who is a prevailing party for an award of disbursements under N.D.C.C. § 28–26–06 is a question of law subject to de novo review, while the question of the amount to be allowed for disbursements and costs is one of fact, subject to an abuse of discretion standard. *Nesvig v. Nesvig*, 2006 ND 66, ¶ 34, 712 N.W.2d 299. The determination of who is a prevailing party entitled to recover necessary disbursements under the statute is based upon success on the merits, not damages. *Dowhan v. Brockman*, 2001 ND 70, ¶ 11, 624 N.W.2d 690. This Court has often said when opposing litigants each prevail on some issues, there may not be a single prevailing party for whom disbursements may be taxed. *See Carpenter v. Rohrer*, 2006 ND 111, ¶ 34, 714 N.W.2d 804; *Dowhan*, 2001 ND 70, ¶ 11, 624 N.W.2d 690; *Fandrich v. Wells County Bd. of County Comm'rs*, 2000 ND 181, ¶ 31, 618 N.W.2d 166; *Lemer v. Campbell*, 1999 ND 223, ¶ 7, 602 N.W.2d 686; *Huber v. Oliver County*, 1999 ND 220, ¶ 22, 602 N.W.2d 710; *Earthworks, Inc. v. Sehn*, 553 N.W.2d 490, 496 (N.D. 1996); *Blackburn, Nickels & Smith, Inc. v. National Farmers Union Prop. and Cas. Co.*, 482 N.W.2d 600, 605 (N.D.1992); *Liebelt v. Saby*, 279 N.W.2d 881, 888 (N.D. 1979); *see also Moen v. Norwest Bank*, 647 F.Supp. 1333, 1344 (D.N.D.1986) (applying North Dakota law); *Hart v. Casterton*, 58 N.D. 657, 227 N.W. 183 Syll. (1929) ("In a statutory action to determine adverse claims, a 'prevailing party' is entitled to recover costs against each contesting adversary in the action; but where each of the contending parties is successful in part and to such a degree that neither can be said to be prevailing as against the adversary, no costs should be awarded to either party").

[¶ 50] WFND prevailed on its claim against Fargo Marc for fraud, and Fargo Marc prevailed on its counterclaim against WFND for breach of the agreement to share in the proceeds from the sale of the detention pond. Because both parties prevailed on their respective claims, we conclude there is no prevailing party for purposes of N.D.C.C. § 28–26–06.

[¶ 51] However, WFND contends that the disbursements listed in N.D.C.C. § 28–26–06 may nevertheless be awarded as discretionary costs under N.D.C.C. § 28–26–10. We agree. This Court has noted that "[i]n general use, the term "costs," when employed with reference to litigation, embraces both disbursements and specific sums allowed by statute as indemnity to the prevailing party for his expenses." *Heger v. DeGroat*, 3 N.D. 354, 358, 56 N.W. 150, 152 (1893). Numerous courts have ruled the terms "costs" and "disbursements" are synonymous, and that "costs" include "disbursements." *See, e.g., Pasquarella v. Santos*, 416 F.2d 436, 437 (1st Cir.1969); *Gibson v. Thrifty Drug Co.*, 173 Cal.App.2d 554, 343 P.2d 610, 611 (1959); *Ferrer v. Ngo*, 102 Hawai'i 119, 73 P.3d 73, 75 n. 1 (2003); *Board of Comm'rs of Hennepin County v. Board of Comm'rs of Wright County*, 84 Minn. 267, 87 N.W. 846, 847 (1901); *Thomas v. Iowa Nat'l Mut. Ins. Co.*, 132 Wis.2d 18, 390 N.W.2d 572, 574 (App.1986). We have labeled as "costs" in our Rules of Appellate Procedure items listed as "disbursements" under N.D.C.C. § 28–26–06. *See* N.D.R.App.P. 39(e).

[¶ 52] Section 28–26–10, N.D.C.C., broadly states that, except in certain actions not pertinent here, "costs may be allowed for or against either party in the discretion of the court." We cannot say the court abused its discretion in awarding each party their costs and disbursements.

X

[¶ 53]   We affirm the judgment.

[¶ 54] GERALD W. VANDE WALLE, C.J., and MARY MUEHLEN MARING, JJ., and WILLIAM F. HODNY, S.J., RONALD E. GOODMAN, S.J., concur.

[¶ 55] The Honorable RONALD E. GOODMAN, S.J., and the Honorable WILLIAM F. HODNY, S.J., sitting in place of SANDSTROM, J., and CROTHERS, J., disqualified.

GOODMAN, Surrogate Judge, concurring in the result.

[¶ 56]   I concur with the majority.  I agree that the oral agreement regarding the sale of the water detention pond is outside the statute of frauds, but I am at a loss as to why the parties did not reduce the agreement to writing.  In oral argument, the attorneys emphasized the business sophistication of the parties.  It seems to me that sophisticated parties would have committed an issue involving over $100,000.00 to writing.

[¶ 57]   Ronald E. Goodman, S.J., agrees.